**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5251-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOHN D. WILLIAMS, JR.,

    Defendant-Appellant.

_____

Submitted July 9, 2018 — Decided July 31, 2018

Before Judges Carroll and Rose.

On appeal from Superior Court of New Jersey,
Law Division, Monmouth County, Municipal
Appeal No. 17-009.

Christopher T. Campbell, attorney for
appellant.

Christopher J. Gramiccioni, Monmouth County
Prosecutor, attorney for respondent (Mary R.
Juliano, Assistant Prosecutor, of counsel and
on the brief; Emily M. M. Pirro, Legal
Assistant, on the brief).

PER CURIAM

    Following denial of his suppression motion in municipal
court, defendant John D. Williams, Jr., entered a conditional
guilty plea to driving while intoxicated (DWI), N.J.S.A. 39:4-50,

and possession of a hypodermic syringe, N.J.S.A. 2C:36-6(a). The municipal court suspended defendant's driving privileges for ten years and imposed a five-day jail term, which was suspended on the condition that defendant successfully complete a one-year probationary term. The court also ordered defendant to participate in the Intoxicated Driver Resource Center, and imposed the appropriate fines, assessments, surcharges, and costs. Upon de novo review, the Law Division judge denied defendant's suppression motion, found defendant guilty, and imposed the identical sentence.

On appeal, defendant challenges the denial of his motion to suppress. Defendant argues the police lacked a reasonable and articulable suspicion to approach his parked vehicle, and lacked probable cause to search the car. He also argues that, because there was no evidence he operated or intended to operate his car, the police lacked probable cause to order him out of the vehicle to perform field sobriety tests. Defendant further contends the factual basis for his guilty plea was inadequate. We reject these arguments and affirm.

We derive the following facts from the record of the suppression hearing. Shortly before midnight on May 30, 2016, Officer Jonathan Gramlich of the Wall Township Police Department (WTPD) was on routine patrol when he was dispatched to the parking

lot of a local Quick Chek convenience store to conduct "[a] welfare check on a subject who was reported to be sleeping in the vehicle." Upon arriving, Gramlich met with a retired WTPD emergency medical technician who had called the police, and then directed Gramlich to the parked vehicle. Gramlich noted the vehicle's engine was running and an adult male, later identified as defendant, was asleep in the driver's seat with his head "slumped backwards, to the side."

Gramlich approached the car and awakened defendant by loudly announcing his presence. According to Gramlich, defendant

> stated that he was on his way to work, his speech was slow. He immediately appeared under the influence, specifically with droopy eye lids, slow lazy speech. Again, stated he was on his way to work. I observed cigarette ashes all over him, and he was dressed inappropriately with no shirt, pajama pants and a bathrobe on.

In response to Gramlich's inquiry, defendant "stated he had to be at work at 6:00 a.m.[,]" which the officer "found suspicious seeing it was nearly midnight." Gramlich also observed "[t]here were bits of cotton on the floorboard [of the car] that are indicative of heroin use."

Gramlich asked defendant to exit the vehicle to perform field sobriety tests because he believed defendant might have been "under the influence." When defendant stepped out of the car, Gramlich

3

observed a hypodermic needle cap in his bathrobe pocket. In response to a question from the officer, defendant advised there "may be" hypodermic needles in the car. At some point, defendant also stated he had used heroin that day. Gramlich searched the car and recovered a hypodermic needle "loaded with an almost clear fluid that is indicative of heroin[,]" located next to "a spoon with burn marks underneath and a residue on top, that's indicative of . . . preparing heroin for use."

Defendant testified at the suppression hearing that he left his home around 11:10 or 11:15 p.m. and drove to the Quick Chek "to buy a pack of cigarettes and use heroin in the parking lot." He stated he had purchased the heroin in Asbury Park earlier that day. At Quick Chek, defendant bought cigarettes, returned to his car, and then "started the car because it was warm, put the air conditioner on. And I lit the spoon to cook the heroin and load the syringe, and I injected it in my arm." Defendant testified he intended to leave "[a]s soon as I came down I guess." On cross-examination by the prosecutor, the following exchange ensued:

> Q. Mr. Williams where did you plan on going after you came to?
>
> A. Most likely back home.
>
> Q. And about how long would that have been after you initially took the heroin?
> A. I really couldn't tell you, it would depend on how bad I was.

A-5251-16T3

Q. But you planned on driving?

A. Eventually, yeah.

On re-direct examination, defendant stated: "I wasn't planning on moving, I was staying there because I couldn't go home because my wife would know that I was high."

At the conclusion of testimony, the municipal court judge denied defendant's motion to suppress. The judge found the officer had a right to confront defendant, and then based on his observations, had a reasonable and articulable suspicion that defendant was under the influence and properly ordered defendant to exit his vehicle. Upon then observing a hypodermic needle cap on defendant's person, "the patrolman's suspicion[,] which was that . . . defendant was under the influence of heroin, became a much more articulable suspicion because now he has proof that . . . defendant is in fact using heroin." The judge further found defendant "has the engine running, he is in the car, he is in the driver seat, he is in control of the vehicle. And when he testified, he indicated as soon as he 'came out of it' it was his intention to operate the motor vehicle." Consequently, the judge concluded "there was sufficient probable cause to arrest . . . defendant for driving while intoxicated."

Defendant entered a conditional guilty plea to DWI and possession of a hypodermic syringe. Pertinent to this appeal,

during the plea colloquy, defendant admitted that on May 30, 2016, in Wall Township, he was "driving while intoxicated as a result of [his] ingestion of heroin while [he was] seated in [his] motor vehicle." The State agreed to dismiss the associated motor vehicle and drug charges, subject to reinstatement if defendant were successful on appeal.

Defendant appealed to the Law Division, arguing there was no reasonable suspicion to seize defendant, nor probable cause to search his vehicle or arrest him for DWI. Defendant also challenged the factual basis for his guilty plea to DWI as inadequate. Following a de novo review, Judge Thomas F. Scully denied defendant's suppression motion. In a thoughtful oral opinion, Judge Scully found that "Patrolman Gramlich's initial approach of . . . defendant's already stopped vehicle . . . was for a valid field inquiry for which no suspicion was required."

Next, Judge Scully noted that after Gramlich approached the car, he observed defendant appeared to be under the influence, and there were bits of cotton on the vehicle's floor that were consistent with heroin use. The judge determined that based on the totality of the circumstances, "Gramlich . . . [then] had a sufficient basis to reasonably suspect that . . . defendant was intoxicated and could lawfully ask . . . defendant to step out of the vehicle and to administer a sobriety test, and also had the

basis to conclude that he has been or is about to engage in criminal wrongdoing."

Regarding defendant's operation of the vehicle, Judge Scully found defendant's argument erroneously conflated probable cause to arrest defendant for DWI with the proof beyond a reasonable doubt necessary to convict him of that offense. The judge again found, based on the totality of the circumstances, which included the officer's observation of bits of cotton on the vehicle's floor that were consistent with heroin use and his admission that he had used heroin that day, that there was

> more than a fair probability that a crime has been committed and defendant was intoxicated and intended to drive his vehicle at the moment the officer approached him. The officer, in this [c]ourt's view, did not have to wait until . . . defendant put his vehicle in motion to offend the law. . . . [D]efendant offended the law the moment he articulated his intention to drive his vehicle.

Finally, Judge Scully found "defendant's factual basis [for his guilty plea] established all the essential elements of N.J.S.A. 39:4-50." The judge declined to consider defendant's argument concerning the search of the vehicle because defendant did not raise that contention in the municipal court and, as such, the record was insufficient to address it. This appeal followed.

Our review of a trial judge's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). "An

appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)). We do so "because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gamble, 218 N.J. 412, 424-25 (2014) (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We owe no deference, however, to conclusions of law made by trial courts in suppression decisions, which we instead review de novo. State v. Watts, 223 N.J. 503, 516 (2015).

In addition, on appeal from a municipal court to the Law Division, the review is de novo on the record. R. 3:23-8(a). The Law Division judge must make independent findings of fact and conclusions of law based upon the evidentiary record of the municipal court, and must give due regard to the opportunity of a municipal court judge to assess the credibility of the witnesses. Johnson, 42 N.J. at 157. On appeal from a Law Division decision, the issue is whether there is sufficient credible evidence present in the record to uphold its findings. State v. Segars, 172 N.J. 481, 488 (2002). "We do not weigh the evidence, assess the

credibility of witnesses, or make conclusions about the evidence." State v. Barone, 147 N.J. 599, 615 (1997). Because neither this court nor the Law Division judge is in a good position to assess credibility, the municipal court's credibility findings are given deference. State v. Locurto, 157 N.J. 463, 470-71 (1999) (citing Johnson, 42 N.J. at 161-62).

Our Supreme Court has defined a field inquiry as "the least intrusive" form of police encounter, occurring "when a police officer approaches an individual and asks 'if [the person] is willing to answer some questions.'" State v. Pineiro, 181 N.J. 13, 20 (2004) (alteration in original) (quoting State v. Nishina, 175 N.J. 502, 510 (2003)). "A field inquiry is permissible so long as the questions '[are] not harassing, overbearing, or accusatory in nature.'" Ibid. (alteration in original) (quoting Nishina, 175 N.J. at 510). During such an inquiry, "the individual approached 'need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.'" State v. Privott, 203 N.J. 16, 24 (2010) (quoting State v. Maryland, 167 N.J. 471, 483 (2001)).

In contrast to a field inquiry, an investigatory stop, also known as a Terry stop, is characterized by a detention in which the person approached by a police officer would not reasonably feel free to leave, even though the encounter falls short of a

formal arrest. State v. Stovall, 170 N.J. 346, 355-56 (2002); see also Terry v. Ohio, 392 U.S. 1, 16 (1968). The Terry exception to the warrant requirement permits a police officer to detain an individual for a brief period, if that stop is "based on 'specific and articulable facts which, taken together with rational inferences from those facts,' give rise to a reasonable suspicion of criminal activity." State v. Rodriquez, 172 N.J. 117, 126 (2002) (quoting Terry, 392 U.S. at 21). Under this well-established standard, "An investigatory stop is valid only if the officer has a 'particularized suspicion' based upon an objective observation that the person stopped has been [engaged] or is about to engage in criminal wrongdoing." State v. Davis, 104 N.J. 490, 504 (1986).

In the context of a motor vehicle stop, a police officer is permitted to approach a parked car and engage the driver in voluntary conversation. State v. Stampone, 341 N.J. Super. 247, 252 (App. Div. 2001). This constitutes a field inquiry. Ibid. "[A] field [inquiry] is not a Fourth Amendment event 'so long as the officer does not deny the individual the right to move.'" State v. Egan, 325 N.J. Super. 402, 409 (Law Div. 1999) (quoting State v. Sheffield, 62 N.J. 441, 447 (1973)). The transition from field inquiry to investigatory stop occurs when the interaction objectively conveys to the driver that the engagement was not

voluntary, and he or she was not free to leave.  Stampone, 341 N.J. Super. at 252.  However, there is no seizure if: "(1) the officer's questions were conversational in manner; (2) the officer made no demands or issued orders; and (3) the officer's questions were neither 'overbearing or harassing in nature.'"  Egan, 325 N.J. Super. at 409 (quoting State ex rel. J.G., 320 N.J. Super. 21, 30 (App. Div. 1999)).

Here, Officer Gramlich's initial approach of defendant's vehicle was clearly a field inquiry.  The scope of the field inquiry permitted him to inquire why defendant was there or to otherwise engage him in consensual conversation and check on his condition.  Id. at 410.

Thereafter, Gramlich's observations of and conversation with defendant, coupled with the presence of bits of cotton on the vehicle's floor that were consistent with heroin use, gave the officer an ample factual basis for a reasonable and articulable suspicion that defendant was under the influence and had violated N.J.S.A. 39:4-50.  Accordingly, the officer properly ordered defendant to exit the vehicle to administer field sobriety tests.  A hypodermic needle cap was then observed in defendant's pocket and he admitted to using heroin, thus establishing probable cause for his arrest.

We also agree with Judge Scully that the evidence adduced at the suppression hearing established probable cause that defendant intended to operate his car. "[A] person who operates a motor vehicle while under the influence of intoxicating . . . narcotic" is guilty of DWI. N.J.S.A. 39:4-50(a). The term "operate" as used in N.J.S.A. 39:4-50(a) has been broadly interpreted. State v. Tischio, 107 N.J. 504, 513 (1987); State v. Mulcahy, 107 N.J. 467, 478-79 (1987). Proof of actual operation of a motor vehicle is not required. State v. Ebert, 377 N.J. Super. 1, 10 (App. Div. 2005). Intent to move a motor vehicle is "operation" under the statute. Tischio, 107 N.J. at 513; Mulcahy, 107 N.J. at 478-79.

Specifically, our Supreme Court has held that

> a person "operates" -- or for that matter, "drives" -- a motor vehicle under the influence of intoxicating liquor, within the meaning of N.J.S.A. 39:4-50 . . . when, in that condition, he enters a stationary vehicle, on a public highway or in a place devoted to public use, turns on the ignition, starts and maintains the motor in operation and remains in the driver's seat behind the steering wheel, with the intent to move the vehicle.
>
> [State v. Sweeney, 40 N.J. 359, 360-61 (1963).]

Evidence of intent to drive or "intent to move the vehicle" satisfies the statutory requisite of operation so that the actual movement of the vehicle is not required. Id. at 361.

Judge Scully properly noted that, at the motion to suppress stage, the State was merely required to establish probable cause that defendant intended to operate the vehicle, versus proving such intent to operate beyond a reasonable doubt. "Probable cause has been defined as a well[-]grounded suspicion that a crime has been or is being committed, and as a reasonable ground for belief of guilt." State v. Gibson, 218 N.J. 277, 292 (2014) (citations omitted). It "is more than a mere suspicion of guilt, [but] . . . less than the evidence necessary to convict a defendant of a crime in a court of law." State v. Basil, 202 N.J. 570, 585 (2010). In the context of an arrest for DWI, "the yardstick . . . is whether the arresting officer had reasonable grounds to believe that the driver was operating a motor vehicle in violation of [N.J.S.A.] 39:4-50." Strelecki v. Coan, 97 N.J. Super. 279, 284 (App. Div. 1967) (citation omitted).

There was sufficient credible evidence in this case to establish probable cause that defendant intended to move his car. In particular, the engine was running, defendant was sitting in the driver's seat at the steering wheel, albeit passed out, and when he awoke, he expressed to Officer Gramlich his clear intent to drive to work.

Like Judge Scully, we decline to address defendant's contention that the subsequent search of his vehicle was illegal.

At the motion to suppress hearing in municipal court, defense counsel agreed the issue was limited to whether "probable cause [existed] to have . . . defendant exit his vehicle for the purpose of performing psychophysical tests." "We generally 'decline to consider questions or issues not properly presented to the trial court . . . unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" State v. Marroccelli, 448 N.J. Super. 349, 373 (App. Div. 2017) (alteration in original) (quoting Robinson, 200 N.J. at 20). Neither exception applies here.

Finally, we reject defendant's contention that the factual basis elicited for his guilty plea to DWI was insufficient. When a defendant challenges the factual basis for a guilty plea, our review is de novo. State v. Tate, 220 N.J. 393, 403-04 (2015). That is so because "[a]n appellate court is in the same position as the trial court in assessing whether the factual admissions during a plea colloquy satisfy the essential elements of an offense." Id. at 404.

Trial courts may not accept a guilty plea unless there is a factual basis supporting it. R. 3:9-2. "Indeed, 'it is essential to elicit from the defendant a comprehensive factual basis, addressing each element of a given offense in substantial detail.'" State v. Perez, 220 N.J. 423, 432 (2015) (quoting State v.

<u>Campfield</u>, 213 N.J. 218, 236 (2013)).  Trial courts "must be satisfied from the lips of the defendant . . . that he committed every element of the crime charged[.]"  <u>Id.</u> at 432-33 (citations and internal quotation marks omitted).  The factual foundation for the plea "may take one of two forms[:] defendant may either explicitly admit guilt with respect to the elements or may 'acknowledge[] . . . facts constituting the essential elements of the crime.'"  <u>Campfield</u>, 213 N.J. at 231 (second and third alterations in original) (quoting <u>State v. Sainz</u>, 107 N.J. 283, 293 (1987)).

Here, during the plea colloquy, defendant expressly admitted driving while intoxicated in Wall Township on May 30, 2016, as a result of his ingestion of heroin.  Accordingly, defendant sufficiently acknowledged facts that constituted the essential elements of N.J.S.A. 39:4-50.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION