**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4421-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DEBRA M. STINSON,

     Defendant-Appellant.

_____

          Argued February 27, 2019 – Decided June 13, 2019

          Before Judges Accurso, Vernoia and Moynihan.

          On appeal from Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 15-09-1762.

          David Anthony Gies, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, attorney; David Anthony Gies, on the briefs).

          Roberta Di Biase, Supervising Assistant Prosecutor argued the cause for respondent (Bradley D. Billhimer, Ocean County Prosecutor, attorney; Samuel J. Marzarella, Chief Appellate Attorney, of counsel; Roberta Di Biase, on the brief).

PER CURIAM

Defendant Debra M. Stinson appeals from a judgment of conviction entered after a jury found her guilty of third-degree arson, N.J.S.A. 2C:17-1(b)(2), a lesser-included offense of the indicted crime, second-degree aggravated arson, N.J.S.A. 2C:17-1(a). Her arguments on appeal relate to pretrial motions she made to suppress her statement to a police officer near the scene of the arson and another statement made at the police station, as well as a motion to bar the State's arson expert's testimony at trial:

> POINT I
>
> THE TRIAL COURT ERRED WHERE IT DID NOT SUPPRESS DEFENDANT'S PRETRIAL STATEMENTS MADE IN RESPONSE TO [THE POLICE OFFICER'S] QUESTIONS WHICH ATTEMPTED TO ELICIT THE ORIGIN AND CAUSATION OF THE FIRE.
>
> POINT II
>
> THE TRIAL COURT ERRED WHERE IT FOUND THAT DEFENDANT'S CUSTODIAL STATEMENT WAS VOLUNTARY WITHOUT BALANCING THE DETECTIVES' INTERROGATION TECHNIQUES AND DEFENDANT'S MENTAL LIMITATIONS WITH WHICH THEY WERE KNOWLEDGEABLE.
>
> POINT III
>
> THE TRIAL COURT ERRED WHERE IT DID NOT BAR THE ARSON EXPERT'S TESTIMONY AS TO CAUSATION UPON WHICH HE BASED HIS

OPINION, AT LEAST IN PART, ON DEFENDANT'S
PRETRIAL ADMISSION OF GUILT.

The trial court did not err in denying defendant's motions and, as such, we affirm.

Defendant made her first statement to a uniformed Manchester Township police officer who responded to a still-active fire in a duplex. The officer ascertained from the first officer on the scene that both units of the duplex had been evacuated and that the resident of Unit A was seated on a bench across the street from the duplex. The officer approached the resident, later identified as defendant, as she was being evaluated by first-aid squad members and asked her to provide pedigree information – name, date of birth, address, phone number and social security number; defendant complied. The officer also asked defendant "if she knew anything about the fire. How it started, you know, if . . . she could tell [him] what happened." According to the officer, defendant replied that she "started a fire in a bucket of shit, and threw it out the window." Finding her response "odd," the officer asked what she meant by that. According to the officer, defendant explained that "she lit plastic bottles on fire, because Lucifer told her to burn all of her good white pants."

A-4421-16T1

The officer did not ask any other questions. He did not arrest defendant. He left defendant, still seated on the bench, with another officer and met with a detective to whom he disclosed his conversation with defendant.

The motion judge, who heard the officer testify at the suppression hearing, found the officer "was not interrogating" defendant but was "simply asking what happened to cause the fire." The judge concluded defendant "was not in police custody and voluntarily confessed her activity in creating the fire without police coercion."

Our review of a trial judge's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). "An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)). We do so "because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gamble, 218 N.J. 412, 424-25 (2014) (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We owe no deference, however, to conclusions of law made by trial courts in suppression

4

decisions, which we instead review de novo. State v. Watts, 223 N.J. 503, 516 (2015).

We disagree with defendant that the officer conducted an investigatory stop without reasonable suspicion, that later escalated "to the even more demanding scenario of an unwarranted seizure of her person requiring Miranda[1] warnings." The evidence establishes that the officer's encounter with defendant was a field inquiry.

An officer is not prohibited from approaching a person and engaging in a voluntary conversation – a field inquiry. State v. Stampone, 341 N.J. Super. 247, 252 (App. Div. 2001). "[A] field [inquiry] is not a Fourth Amendment[2] event 'so long as the officer does not deny the individual the right to move.'" State v. Egan, 325 N.J. Super. 402, 409 (Law Div. 1999) (quoting State v. Sheffield, 62 N.J. 441, 447 (1973)); see also State v. Rosario, 229 N.J. 263, 273-74 (2017) (citing Egan favorably). "A field inquiry is permissible so long as the questions '[are] not harassing, overbearing, or accusatory in nature.'" State v. Pineiro, 181 N.J. 13, 20 (2004) (alteration in original) (quoting State v. Nishina,

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

[2] U.S. Const. amend. IV; see State v. Handy, 206 N.J. 39, 45-46 (2011) (recognizing that, like the Fourth Amendment, the "parallel language" of N.J. Const. art. I, ¶ 7 protects citizens from unreasonable searches and seizures).

175 N.J. 502, 510 (2003)). "The officer's demeanor is relevant to the analysis. For example, 'an officer would not be deemed to have seized another if his questions were put in a conversational manner, if he did not make demands or issue orders, and if his questions were not overbearing or harassing in nature.'" State v. Rodriguez, 172 N.J. 117, 126 (2002) (citations omitted) (quoting State v. Davis, 104 N.J. 490, 497 n.6 (1986)).

The officer testified defendant was calm when he approached her. He did not limit her movement; in fact, defendant felt comfortable enough to get up from the bench. The officer did not restrict defendant's movement during the encounter. The conversation was brief. The officer did not know the origin of the fire when he approached defendant, so the questions posed to defendant were conversational, not accusatory or pointed; he was evidently surprised by defendant's reply. He did not consider defendant a suspect in the arson until she admitted she set the fire. In short, the officer did nothing to convert that field inquiry to an investigative stop or a seizure.

It is of no moment that the officer left defendant in the company of another officer when he left to speak to the detective. He posed no further questions to defendant. Defendant made no other statement to him. The motion to suppress the statements made to the officer was properly denied.

6

Defendant also challenges the denial of her motion to suppress the recorded statement she made at the police station to two detectives. The Manchester officer briefed a Manchester detective about the conversation he had with defendant. The Manchester detective and an Ocean County Prosecutor's detective then approached defendant – still seated on the bench – and, after ascertaining that she did not desire any medical attention, asked her if she would go to the police station and provide a statement. Defendant agreed. The video-recorded statement began at 5:37 p.m. and ended at approximately 6:13 p.m. Defendant contends in her merits brief the trial court erred by failing to consider that the detectives "knew of and exploited [defendant's] mental illness" and argues that her statement was not voluntary because "the detectives' custodial interrogation was coercive in light of defendant's mental illness."

The motion judge heard the testimony of the Manchester detective, Dr. Kenneth Weiss – a psychiatrist called as a defense expert witness – and viewed the videotaped statement. We review her decision under the standard we have already announced adding only that, because the judge's factual findings were based on her review of the videotaped statement, we review the videotape to verify that the judge's findings were supported by sufficient evidence in the record. State v. Hubbard, 222 N.J. 249, 262-65 (2015).

"Confessions obtained by police during custodial interrogation are barred from evidence unless the defendant has been advised of his [or her] constitutional rights." State v. Timmendequas, 161 N.J. 515, 613 (1999). Before a defendant's statement is admitted, the State must prove beyond a reasonable doubt that the defendant, in light of all the circumstances, knowingly, intelligently and voluntarily waived his or her Miranda rights. State v. Knight, 183 N.J. 449, 461-63 (2005).

The State must also prove beyond a reasonable doubt that a defendant's statement to the police was not the product of coercion or "official misconduct." See Id. at 463. In determining the voluntariness of a defendant's statement, courts consider whether the statement was "'the product of an essentially free and unconstrained choice by its maker,' in which case the statement may be used against the defendant, or whether the defendant's 'will has been overborne and his [or her] capacity for self-determination critically impaired.'" State v. P.Z., 152 N.J. 86, 113 (1997) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973)). "This issue can be resolved only after an assessment of the 'totality of the circumstances' surrounding the statement." Ibid. (quoting Arizona v. Fulminante, 449 U.S. 279, 285-86 (1991)).

From our review of the record, we discern the motion judge's conclusion that defendant, after knowingly, intelligently and voluntarily waiving her <u>Miranda</u> rights, "was not coerced or intimidated by police . . . during the interview at the police station" is well supported. Defendant agreed to go to the police station. There police confirmed defendant was not in need of medical attention and provided her with requested water. Although defendant now argues that the detectives ignored her "complain[t] that she had not slept for several days," defendant appeared awake and alert.

Defendant responded to the detective's preliminary questions; their conversation was cordial. Defendant listened to the <u>Miranda</u> warnings with, in her words, "[e]ars wide open" and interrupted the administration of rights to tell the detective, "I know that it's in the constitution" and that she had read it in school. When the detective finished reading the rights, defendant acknowledged that she understood the rights and signed the forms agreeing to the waiver. As the motion judge found, defendant – who completed a two-year associate's degree in computer science – seemed "to be of above-average intelligence." Her own expert, Dr. Weiss, acknowledged on cross-examination that defendant had "at least average" intelligence.

A-4421-16T1

Just after the forms were signed, defendant said, "Oh please, please ask me the one question that I want to get off my chest." Despite defendant's interjected non sequiturs, she thereafter responded to the detectives' questions about the incident, providing details of how she started the fire. Contrary to defendant's contention in her merits brief, the detectives did not tell "her the facts they wanted to know and she agreed." Defendant and the detectives spoke calmly; their voices were not raised. The detectives' questions were not at all coercive; they were patient and non-threatening.

Dr. Weiss opined defendant was having a "manic episode" during the interview and her mental illness prevented her from having "the capacity to sign away her rights knowingly and intelligently." The judge properly rejected that opinion, State ex rel. C.A.H., 89 N.J. 326, 343 (1982), concluding:

> Even though Dr. Weiss stated in his testimony that he believed [defendant's] mental illness caused her will to be overborne such that she could not understand the implications of waiving her rights, he could not dispute her [orientation as to] person, place and time and of her right to remain silent or request an attorney.

The judge noted that defendant "was able to correctly answer questions such as who the President of the United States was, what year it was, [defendant's] address, . . . questions about her family and background," and the extent of her education.

As we observed in State v. Smith:

> The fact that defendant was suffering from a mental illness at the time of the questioning did not render his waiver or his statement involuntary. The United States Supreme Court has held that "coercive police activity is a necessary predicate to [a] finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Colorado v. Connelly, 479 U.S. 157, 167 (1986). The Court stressed that the "Fifth Amendment privilege is not concerned 'with moral and psychological pressures to confess emanating from sources other than official coercion.'" Id. at 170 (quoting Oregon v. Elstad, 470 U.S. 298, 304-05 (1985)). "The voluntariness of a waiver of this privilege [was said to] depend[] on the absence of police overreaching, not on 'free choice' in any broader sense of the word." Ibid. The Court added that "the relinquishment of the right [to remain silent] must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. . . ." Ibid. (citing Moran v. Burbine, 475 U.S. 412, 421 (1986)).
>
> [307 N.J. Super. 1, 10-11 (App. Div. 1997) (alterations in original).]

Nothing in the record supports defendant's contention that the detectives exploited defendant's mental illness or employed coercion to obtain her statement. The totality of the circumstances supports the motion judge's findings that, despite her mental illness, defendant's waiver of Miranda rights and her statement were made knowingly, intelligently and voluntarily. We find no reason to disturb the judge's findings or conclusion.

11

Defendant urges that the trial court erred in allowing the State's arson expert to testify, based in part on defendant's statement to police, that the cause of the fire was incendiary. Conceding in her merits brief that the expert "may have been able to testify permissibly that based on his special knowledge and experience by the process of elimination the objective characteristics of the scene show the fire was intentionally set, [she avers] he is not able to testify that based on defendant's admission of guilt the fire was incendiary."

After opining that the origin of the fire was "inside the living room of the structure and the point of origin [was] inside the plastic pot, more specifically on top of the humidifier," the State's expert testified on direct examination about the cause of the fire:

> Prosecutor: And how do you get to the opinion as to the cause of the fire?
>
> Detective: The cause of the fire is determined through the scientific method, which I went over earlier, the multiple stages of that with the hypothesis and testing the hypothesis, and going through the process of elimination where I went through the many photos last week that showed that I eliminated the electrical in that room and all the other major utilities within that structure.
>
> Prosecutor: What did you use as far as getting to your opinion as the cause of the fire? Did you review items?

Detective: Yes. It's based on the scene examination itself, but it's also based off of all police reports that were conducted that day, all photographs, all statements regarding witnesses. . . . Also the Defendant's statement[] itself. And based on my training and experience, I was able to determine a cause of the fire.

Prosecutor: And what is – can you tell the jury what your opinion is as to the cause of the fire?

Detective: That it's incendiary. It was intentionally set by a person using an open flame to available combustibles, such as a pair of white pants and various other cardboard products and any other combustibles that were located with inside that plastic pot.

The record belies defendant's argument. Although the expert reviewed defendant's statement – together with many other documents and photographs – he did not say that he relied on defendant's admission of guilt. He never testified that defendant intentionally set the fire. His conclusion that the fire was intentionally set was based on the elimination of other sources, see Creanga v. Jardal, 185 N.J. 345, 356 (2005) (discussing how an expert may use process of elimination to come to his or her conclusion); see also State v. Sharp, 395 N.J. Super. 175, 181-82 (Law Div. 2006) (allowing an opinion on the causation of fire based on a process of elimination), and his examination of the scene and documentary and photographic evidence, State v. Townsend, 186 N.J. 473, 494 (2006) (holding expert opinions must be grounded in "facts or data derived from

(1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts in forming opinions on the same subject" (quoting Biunno, N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 703 (2005))).

"The admission or exclusion of expert testimony is committed to the sound discretion of the trial court." Townsend v. Pierre, 221 N.J. 36, 52 (2015). We afford deference "to a trial court's decision to admit expert testimony, reviewing it against an abuse of discretion standard." Id. at 53 (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371-72 (2011)). We conclude the trial judge did not abuse her discretion in admitting the arson expert's testimony.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4421-16T1