**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0204-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JAMIR TIMMONS, a/k/a
JAMIR MALIK TIMMONS,
and JAMIR M. TIMMINS,

     Defendant-Appellant.

_____

Submitted December 1, 2020 – Decided March 5, 2021

Before Judges Gilson and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-01-0071.

Joseph E. Krakora, Public Defender, attorney for appellant (Patrick D. Laconi, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jamir Timmons pleaded guilty to second-degree unlawful possession of a loaded .38-caliber Smith & Wesson revolver, N.J.S.A. 2C:39-5(b), recovered from a fanny pack he was wearing and appeals from that judgment of conviction pursuant to Rule 3:5-7(d), arguing:

> POINT I
>
> THE PRE-TRIAL COURT SHOULD HAVE SUPPRESSED THE EVIDENCE OF MARIJUANA AND THE HANDGUN RECOVERED FROM [DEFENDANT'S] PERSON DURING THE SEARCH INCIDENT TO [DEFENDANT'S] ARREST BECAUSE THE POLICE [OFFICER] SEIZED [DEFENDANT] WITHOUT A REASONABLE ARTICULABLE SUSPICION THAT [DEFENDANT] WAS ENGAGED IN, OR ABOUT TO ENGAGE IN, CRIMINAL ACTIVITY, RENDERING THE RECOVERY OF MARIJUANA AND THE HANDGUN FRUIT OF THE POISONOUS TREE.[1]
>
> > A. The Pre-Trial Court Erred in Failing to Find [t]hat [Defendant] Had Turned Away [f]rom and Walked Away [f]rom [the Officer's] Patrol Vehicle Immediately Prior [t]o [t]he Interaction Between [the Officer] and [Defendant].
> >
> > B. The Pre-Trial Court Erred in Holding the Police's Initial Interaction with

[1] Defendant was arrested for possession of the revolver and marijuana. After defendant moved to suppress the revolver and the marijuana, the marijuana possession charge, N.J.S.A. 2C:35-10(a)(4), was dismissed.

A-0204-18

[Defendant] [W]as a Valid Field Inquiry and Not a Seizure Under the Fourth Amendment.

C. The Police Seized [Defendant] Without Reasonable Suspicion that Criminal Activity [W]as Afoot; Therefore the Seizure Violated the Fourth Amendment.

D. The Pre-Trial Court Erred [i]n Not Suppressing [t]he Evidence of Illegal Drugs and the Handgun Found on [Defendant's] [P]erson [A]s a Result of an Unlawful Seizure [A]s Fruit of the Poisonous Tree.

POINT II

IF THE COURT DOES NOT REVERSE THE PRE-TRIAL COURT'S ORDERS DENYING [DEFENDANT'S] MOTION TO SUPPRESS AND MOTION TO RECONSIDER PURSUANT TO POINT I ABOVE, AND HOLDS AT THE POINT WHEN [THE OFFICER] SAID TO [DEFENDANT], "EXCUSE ME, SIR," THE ENCOUNTER BETWEEN [THE OFFICER] AND [DEFENDANT] DID NOT RISE TO THE LEVEL OF A SEIZURE UNDER THE FOURTH AMENDMENT, THE PRE-TRIAL COURT ERRED IN FAILING TO SUPPRESS THE MARIJUANA AND HANDGUN SEIZED FROM [DEFENDANT'S] PERSON AS A RESULT OF AN UNCONSTITUTIONAL FIELD INQUIRY BASED ON IMPERMISSIBLE CRITERIA.

We determine these arguments are without merit and affirm substantially for the

reasons set forth in Judge Michael L. Ravin's well-reasoned written decisions

3

denying defendant's motion to suppress the handgun and marijuana and motion to reconsider that denial.

At an evidentiary hearing, Judge Ravin heard testimony from the Irvington police officer who found and seized the evidence.  From that testimony, the judge found that on September 26, 2016, the uniformed officer was assigned to patrol a sector in Irvington which had experienced, as described by defendant in his merits brief, "a slew of robberies" committed by suspects variously described in a crime-alert flyer that was given to the officer prior to the start of his patrol:

> DUE TO THE RECENT INCREASE IN FIREARM ROBBERIES TOWN[-]WIDE[,] ALL UNITS ARE TO BE ON THE LOOK OUT FOR TWO BL[AC]K MALES BETWEEN THE
>
> AGES:  20-25
>
> WEIGHT:  130-160
>
> SKIN TONE:   LIGHT[-]SKINNED AND DARK[-]SKINNED
>
> HAIR STYLE:  LOW[-]CUT HAIR—DREAD LOCKS
>
> HOODED SWEAT . . . SHIRTS TO CONCEAL THEIR FACES.

While on patrol that evening in a marked police unit, the officer observed defendant walking with another male and deduced the two individuals matched the description in the flyer.  The judge noted defendant "was not doing anything

4

illegal" and the officer did not "notice any contraband on [d]efendant." But, because the two matched the description in the flyer, the officer drove in defendant's direction, stopped and exited his vehicle. As defendant and the officer approached each other, the officer said, "[e]xcuse me, sir."

Defendant contests the judge's findings as to what ensued during that encounter, contending the officer's testimony contradicted his prior accounts during the grand jury proceeding and in his incident report, as well as his suppression-hearing testimony during cross-examination. Particularly, defendant argues the judge erred by finding defendant was walking toward the officer in light of other testimony in which the officer said defendant briskly walked away from him.

While we review a motion judge's legal conclusions de novo, State v. Dunbar, 229 N.J. 521, 538 (2017), our "review of a motion judge's factual findings in a suppression hearing is highly deferential," State v. Gonzales, 227 N.J. 77, 101 (2016). We defer to those findings because they "are substantially influenced by [the judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Lamb, 218 N.J. 300, 313 (2014) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). We are obliged to uphold a motion judge's factual findings so long as there is

5

sufficient credible evidence in the record to support the judge's findings, <u>Elders</u>, 192 N.J. at 243, and will reverse only when the trial court's findings "are so clearly mistaken 'that the interests of justice demand intervention and correction,'" <u>id.</u> at 244 (quoting <u>State v. Johnson</u>, 42 N.J. 146, 162 (1964)).

As Judge Ravin wrote in his opinion denying the suppression motion, he "heard the testimony and observed the tone and demeanor of [the officer]" and, observing that "[h]is testimony was reasonable [and that] he did not hesitate to answer questions and was forthcoming when he did not remember or know an answer[,]" found the officer credible. The judge recognized the discrepancies between the officer's report and testimony but "did not detect an intent to deceive." The judge's conclusion that defendant was walking toward the officer, based on the officer's direct testimony deemed credible by the judge, is entitled to our deference.

Moreover, even if defendant had been walking away from the officer, that fact would have had no impact on the judge's finding that the officer's initial encounter with defendant was a field inquiry, described by our Supreme Court as "a voluntary encounter between the police and a member of the public in which the police ask questions and do not compel an individual to answer," and

during which the individual is free to leave. State v. Rosario, 229 N.J. 263, 271 (2017); see also Elders, 192 N.J. at 246.

Although defendant argues the encounter at that point was an investigatory stop, sometimes referred to as a Terry[2] stop, implicating constitutional requirements of "specific and articulable facts which, taken together with rational inferences from those facts," provide "a reasonable suspicion of criminal activity," Elders, 192 N.J. at 247 (quoting State v. Rodriguez, 172 N.J. 117, 126 (2002)); see also Rosario, 229 N.J. at 272, there is no such impediment to an officer approaching a person and engaging in a voluntary conversation, see State v. Stampone, 341 N.J. Super. 247, 252 (App. Div. 2001). An individual's Fourth Amendment rights are not violated by police simply "approaching [him] on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." Florida v. Royer, 460 U.S. 491, 497 (1983); see also State v. Davis, 104 N.J. 490, 497 (1986). "[A] field [inquiry] is not a Fourth Amendment event 'so long as the officer does not deny the individual the right to move.'" State v. Egan, 325 N.J. Super. 402, 409 (Law

---

[2] Terry v. Ohio, 392 U.S. 1 (1968).

A-0204-18

Div. 1999) (quoting State v. Sheffield, 62 N.J. 441, 447 (1973)). As Judge Ravin determined, that is precisely what happened here.

We have previously held a police officer does not illegally seize an individual when an officer makes a U-turn to follow the individual where, as here, the officer does so without activating the vehicle's siren or otherwise asserting his or her authority. See State v. Hughes, 296 N.J. Super. 291, 296-97 (App. Div. 1997). Further, the officer did not "make demands or issue orders," and did not ask any questions that were "overbearing or harassing in nature," Davis, 104 N.J. at 497 n.6; see also Rodriguez, 172 N.J. at 126, nor did he, at that point, accuse defendant of any wrongdoing, see State v. Nishina, 175 N.J. 502, 510 (2003).

As Judge Ravin concluded, the officer's simple statement—"[e]xcuse me, sir"—would not cause an objectively reasonable person to have felt she or he was not "free to leave or to terminate the encounter with police." Rosario, 229 N.J. at 273. Defendant made the decision—whether he was walking toward or away—to stop and engage the officer. As stated in defendant's merits brief, when the officer said, "[e]xcuse me, sir," "at that point, defendant stopped and began speaking with [the officer]." He did not "attempt[] to terminate the contact by departing" or "clearly express[] a desire not to cooperate." State v.

<u>Stovall</u>, 170 N.J. 346, 358 (2002) (quoting 4 Wayne R. LaFave, <u>Search and Seizure</u> § 9.3(a), at 102-03 (3d ed. 1996)).

That changed, however, when the officer asked defendant if he possessed any marijuana. <u>See</u> <u>State ex rel. J.G.</u>, 320 N.J. Super. 21, 30 (App. Div. 1999) (holding an officer's question, "you do not have anything you shouldn't," "converted [a] field inquiry into a <u>Terry</u> stop detention"); <u>see also</u> <u>State v. Contreras</u>, 326 N.J. Super. 528, 540 (App. Div. 1999) (holding a police encounter where "the officers spoke to defendants in a conversational tone and . . . did not draw their weapons or use handcuffs," was converted to a seizure by asking "defendants whether they had any contraband on them," questions deemed "overbearing or harassing in nature").

Judge Ravin correctly determined defendant was seized at that juncture; but the officer had "specific and articulable facts which, taken together with rational inferences from those facts," provided "a reasonable suspicion of criminal activity." <u>Elders</u>, 192 N.J. at 247 (quoting <u>Rodriguez</u>, 172 N.J. at 126). As the judge found, from a distance of about sixty-two inches the officer detected the smell of "raw marijuana emanating from [d]efendant." The judge credited the officer's testimony that, in his fifteen years on the force, he had training and experience in the smell of marijuana, and found that under the

9

totality of the circumstances, the officer had a reasonable suspicion that defendant possessed marijuana, thus justifying the investigatory stop.

Judge Ravin's ruling followed the two-step analysis, recognized by our Supreme Court, set forth in <u>United States v. Cortez</u>, 449 U.S. 411, 418 (1981),

> for determining whether the totality of circumstances creates a "particularized suspicion." A court must first consider the officer's objective observations. The evidence collected by the officer is "seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." "[A] trained police officer draws inferences and makes deductions . . . that might well elude an untrained person. The process does not deal with hard certainties, but with probabilities." Second, a court must determine whether the evidence "raise[s] a suspicion that the particular individual being stopped is engaged in wrongdoing."
>
> [<u>Davis</u>, 104 N.J. at 501 (alterations in original) (citations omitted) (quoting <u>Cortez</u>, 449 U.S. at 418).]

We agree with his assessment that the stop was supported by the reasonable and articulable suspicion that defendant possessed marijuana based on the officer's recognition of the smell coming from defendant.

Responding to the officer's inquiry, defendant admitted he had marijuana in his fanny pack. The officer told defendant to surrender the marijuana. When defendant opened the fanny pack, the officer immediately recognized the handle

of a gun protruding from the bag.  Defendant was arrested for possessing the firearm.  Marijuana was discovered in the search incident to defendant's arrest.

Defendant does not challenge that the firearm was properly seized under the plain view doctrine[3] or the marijuana was seized pursuant to a valid search incident to arrest.  See Chimel v. California, 395 U.S. 752, 762-63 (1969); see also State v. Gibson, 218 N.J. 277, 299 (2014).  He argues the seizure of that evidence was the fruit of the improper investigatory stop.  In that we agree with

---

[3]  The plain view doctrine permits law enforcement to seize contraband without a warrant under the following conditions:

> First, the police officer must be lawfully in the viewing area.
>
> Second, the officer has to discover the evidence "inadvertently," meaning that he did not know in advance where evidence was located nor intend beforehand to seize it.
>
> Third, it has to be "immediately apparent" to the police that the items in plain view were evidence of a crime, contraband, or otherwise subject to seizure.
>
> [State v. Bruzzese, 94 N.J. 210, 236 (1983) (citations omitted) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 466 (1971)), overruled in part by Gonzales, 227 N.J. 77.]

Later, in Gonzales, the Court "reject[ed] the inadvertence prong as a component of the plain-view exception as articulated in Bruzzese."  227 N.J. at 101.

Judge Ravin that the initial contact with defendant was a field inquiry that transformed into an investigatory stop based on a reasonable and articulable suspicion that defendant possessed marijuana, leading to the plain view seizure of the handgun and the marijuana seizure following defendant's arrest, there is no reason to suppress the evidence under the exclusionary rule.

We also reject defendant's contention that the field inquiry was impermissibly based on defendant's race. Of course,

> the questioning of [a] defendant as part of a field inquiry is not sustainable if the officers approached him and his companions solely because of their race and age. Although a field inquiry may be conducted in the absence of grounds for suspicion without violating the Fourth Amendment or Article I, paragraph 7 of the New Jersey Constitution, that does not mean the police may rely on impermissible criteria to question individuals.

> [State v. Maryland, 167 N.J. 471, 484 (2001).]

But that is not what happened in this case. The officer approached defendant not solely because he was a black male, although that was part of the description of the robbers in the flyer the officer received before beginning his patrol. As Judge Ravin observed in his reconsideration-motion opinion, defendant was in the same area where the robberies were committed. He was wearing similar clothing to that described, albeit common garb. Defendant's age—eighteen—was close to that of the suspects. And, as the officer testified,

he believed both defendant and the person initially with him matched the description.

Judge Ravin found the field inquiry was not based solely on defendant's race, but on the legitimate need to inquire into the rash of robberies in the officer's sector; the record contains sufficient, credible evidence to support this finding. See Stovall, 170 N.J. at 363 (concluding that, if officer had "failed to investigate suspicious behavior, he would have been derelict in his duty" because "[a] police officer has the duty to investigate suspicious behavior"). That defendant may not have matched the exact description in the flyer should not have curtailed the officer's initial approach. The rapidly unfolding events, transitioning from field inquiry to investigatory stop after the officer smelled marijuana when he closed to within about five feet from defendant at 9:30 p.m. on a late-September evening, did not present the officer with any prolonged exposure to defendant's appearance that would have lent support to defendant's contention that "it should have been immediately obvious to [the officer] once he observed [defendant] and the other person, that the two persons [did] not match the suspects in the [flyer]."

We determine the balance of defendant's arguments to be without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0204-18