191 N.J. Super. 573 (1983)
468 A.2d 713
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JESUS M. ALEXANDER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued August 16, 1983.
Decided November 9, 1983.
*574 Before Judges FURMAN, TRAUTWEIN and BRODY.
Susan T. Sinins, Assistant Deputy Public Defender, argued the cause for appellant (Joseph H. Rodriguez, Public Defender of New Jersey, attorney; Susan T. Sinins of counsel and on the letter brief).
Deborah Collins, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; Deborah Collins of counsel and on the letter brief).
The opinion of the court was delivered by BRODY, J.A.D.
Defendant received an 18-month probation sentence after pleading guilty to possession of two tablets of LSD. He appeals the denial of his motion to suppress claiming that the police *575 seized the drugs in the course of an unlawful stop. The judge found that after an officer had asked defendant to show proof of his identity, he observed the tablets when defendant opened his wallet. We affirm.
Officer Michael Karwacki and defendant were the only witnesses at the motion hearing. According to the officer, on the afternoon in question he and his partner were patrolling Hill's Place in a marked police car. He had not known the neighborhood prior to his assignment there about four months earlier. Although he was alerted by other officers that Hill's Place "is a rather high drug area," he had yet to make his first drug arrest there.
Hill's Place is a one-way street. At about 2:00 p.m., the officers were proceeding up that street in the wrong direction to avoid detection by anyone engaged in illegal activities. The street was lined with "row homes" on both sides and crossed by railroad tracks. As they approached the tracks Karwacki, who was in the front passenger seat, noticed three men standing to his left about 12 feet away. They were in an area between an "abandoned building" and the tracks. Defendant was "passing [money] to one of the other subjects.... [A]s soon as we stopped and seen them, we stopped. They turned and looked, I guess, appeared to be surprised. We asked them what they were doing there. We got a response of [`]nothing.[']" On the basis of these observations the officers left their car and asked the men for proof of their identity. When defendant opened his wallet, Karwacki saw the drugs and arrested him. The officers let the other men go. Karwacki did not know any of these men before this encounter.
Defendant testified that he lived in the neighborhood and stopped to talk with the other men by the tracks. In the course of their conversation one of the men, who lived in the house Karwacki described as abandoned, returned to defendant $3 that he had borrowed. The police car then pulled up. "They came out of the car and they said, all right, nobody move. And we *576 just stand there cause it was nothing happening, you know, he did ask for I.D., but then again I'm not too sure if it was him or the other one pulled out my wallet. I didn't pull out my wallet personally."
The judge found that before the incident the officers had been advised that the area they were patrolling was "a high crime area;" that the three men were standing "between an abandoned building and the railroad tracks and off the street or sidewalk...;" that the officers saw "an exchange of money, that is, between defendant and one of the other parties in the group of three;" and that when asked what they were doing, "one person in the group [responded] nothing. At that point, the officers then asked that identification be shown to them by the three individuals." The judge found that defendant pulled out his wallet and opened it, thereby uncovering the tablets. We must accept these findings as they are supported by sufficient credible evidence, giving due regard to the judge's ability to assess the credibility of the witnesses. State v. Johnson, 42 N.J. 146, 162 (1964).
Without articulating his reasoning, the judge concluded that the stop was permissible because "the officer had an objective reasonable suspicion, which although it did not rise to the level of believing that there was probable cause to believe that a crime had been committed, or was being committed, it did rise to the level of requiring that he proceeded [sic] to make further investigation."
From a welter of authority concerning the constitutional lawfulness of encounters with the police in public places, three significantly different situations have emerged. The police may "arrest" only if they have probable cause; they may "stop" for brief investigatory questioning if they have an articulable, reasonable basis for suspicion; and they may make an "inquiry" without any grounds for suspicion. See Florida v. Royer, ___ U.S. ___, ___, 103 S.Ct. 1319, 1324-1325, 75 L.Ed.2d 229, 236-237 (1983). Placing a particular encounter in one or *577 another of the categories requires a careful examination of the facts in each case to determine the seriousness of the criminal activity under investigation, the degree of police intrusion and the extent of the citizen's consent to that intrusion. See State in Interest of T.L.O., 94 N.J. 331, 346 (1983) cert. granted ___ U.S. ___, 104 S.Ct. 480, 77 L.Ed.2d ___ (1983). There is no "litmus-paper test" that will cover all circumstances. See Florida v. Royer, supra, 103 S.Ct. at 1329, 75 L.Ed.2d at 242. To further complicate the analysis, a single encounter may escalate from "inquiry" to "stop" to "arrest" so that the criteria for each category must be applied as the situation shades off from one category to the other. See State v. Sheffield, 62 N.J. 441, 447-448 (1973).
It is agreed that the officers here did not have probable cause to arrest defendant until the drugs were observed. Defendant contends, however, that before then there was a "stop" which lacked the requisite "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968).
Handing money to someone in broad daylight in an open area at or near the public way may not be a reasonable basis for suspecting drug dealing. Nor may simply being in a "high drug area" and replying "nothing" to a police request for an explanation of conduct. See In re State in the Interest of D.S., 63 N.J. 541 (1973), rev'g on dissent 125 N.J. Super. 278, 283-287 (App. Div. 1973). A look of surprise at seeing police officers emerge from a patrol car heading in the wrong direction on a one-way street is not itself surprising. However, taken together these facts found by the trial judge form a reasonable basis to suspect that defendant was engaged in an illegal drug transaction. While the basis is slight, its reasonableness must be judged in light of the seriousness of drug dealing, the minimal intrusion of a simple request for identification and the consensual component of defendant's compliance.
*578 An argument might be made that in a public place a routine police request for identification with no show of authority other than the officer's presence, is so slight an intrusion as to be a mere inquiry requiring no articulable basis. See Gomez v. Turner, 672 F.2d 134, 142-144 (D.C. Cir.1982). Florida v. Royer, supra, 103 S.Ct. at 1327, 1337, 75 L.Ed.2d at 240, 253, may by inference support that proposition. However, because we are satisfied that the request for identification here was not completely baseless, we need not decide whether it would have been lawful had there been no articulable basis at all. See State v. Wilcox, 180 N.J. Super. 452 (App.Div. 1981).
Affirmed.