739 A.2d 469 (1999)
325 N.J. Super. 402
STATE of New Jersey, Plaintiff,
v.
Michael EGAN, Defendant.
Superior Court of New Jersey, Law Division (Criminal), Atlantic County.
July 2, 1999.
*470 Nicole M. Miles, Assistant Atlantic County Prosecutor.
Renata Lowenbraun, for defendant Michael Egan.
GAROFOLO, P.J.Cr.
The defendant was convicted in Municipal Court of driving while his license was suspended (N.J.S.A. 39:3-40) Before trial he brought a motion to suppress, arguing that the evidence of his license suspension was the fruit of an investigatory stop not founded on reasonable suspicion. His motion was denied. On trial de novo before this Court, his motion is granted.
On September 4, 1998 at approximately 7:50 a.m., off-duty Detective Christopher Dinger ("officer") of the New Jersey State Police was sitting in his own vehicle with his eight year-old son on First Avenue, a rural street in Galloway Township. Awaiting the arrival of the son's school bus, the officer noticed a white male, later identified as defendant, sitting in a white Plymouth van parked in the northbound lane of travel approximately 300 yards south of the stop. Several minutes later, as the officer's son was entering the bus, the officer noticed defendant's van had turned around and was now parked in the southbound lane. Based solely on these observations, the plain-clothed officer approached the van, identified himself as a state trooper, showed defendant his badge, and asked him for his "driving credentials." Defendant, who had been reading a newspaper, produced valid insurance and registration cards for the van but told the officer he did not have a driver's license. Based on a subsequent check of his license status, defendant was charged with driving while suspended, a violation of N.J.S.A. 39:3-40. The officer's limited explanation for approaching defendant was that the van was "a suspicious car first thing in the morning." The officer also testified that he recognized some of the vehicles in the neighborhood but had never seen defendant's van.
Defendant sought to suppress the evidence obtained following the officer's approach on the basis that it was procured in violation of his fourth amendment rights. State v. Ercolano, 79 N.J. 25, 397 A.2d 1062 (1979), Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Deferring to the officer's knowledge and experience, the municipal court denied defendant's motion to suppress. Defendant subsequently plead guilty. Due to previous motor vehicle violations, defendant was fined $1,250.00, sentenced to 45 days in jail, and ordered to surrender his license for a period of one year. On appeal, defendant again argues that there was no articulable reasonable suspicion for the officer's inquiry. The State counters that assuming arguendo that defendant is *471 correct, no "stop" occurred and that the officer's conduct amounted to nothing more than a "field inquiry" which need not be supported by reasonable articulable suspicion.
Since Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 20 L.Ed.2d 889 (1968), federal law recognizes that an officer's brief stop of a suspicious individual for the purposes of obtaining that person's identity may be reasonable and appropriate in light of the circumstances. Adams v. Williams, 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) (citation omitted). The Supreme Court has explicitly determined that a request for identification is not a "seizure", at least where the suspect fits a particular criminal profile. See, e.g., United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). The Eighth and Ninth Circuits have followed this view. U.S. v. $25.000 U.S. Currency, 853 F.2d 1501, 1505 (9th Cir.1988); United States v. Angell, 11 F.3d 806 (8th Cir. 1993). Although the Appellate Division has stated that "an argument may be made" that a request for identification in a public place may be "so slight an intrusion as to be mere inquiry," no binding New Jersey precedent so holds.[1]State v. Alexander, 191 N.J.Super. 573, 578, 468 A.2d 713, 714 (App.Div.1983) citing Gomez v. Turner, 672 F.2d 134, 142-144 (D.C.Cir. 1982). In State v. Wilcox, 180 N.J.Super. 452, 435 A.2d 569 (App.Div.1981), the court held the officer's "stop", request for identification, and search of the person after the person had provided identification the officer knew to be false, was valid, reasoning that a brief detention to ascertain a person's identity was appropriate under the circumstances. However, the court did not address the issue of whether the police action constituted an inquiry or stop. Given that no reported New Jersey case has adopted the federal standard set forth in Mendenhall, $25,000 Currency, and Angell, supra, the issue is whether this court should.
New Jersey courts have declined conformance with federal authority addressing the exact issue before it where "sound policy reasons" justify the departure. See, e.g., State v. Hunt, 91 N.J. 338, 344-345, 450 A.2d 952, 955 (1982) ("[t]his Court has seen fit to hold that the search and seizure provisions in the federal and New Jersey constitutions are not always coterminous, despite the congruity of the language.") However, this court is mindful of our Supreme Court's desire for uniformity of interpretation of search and seizure law where identical situations are present. Hunt, supra, at 344, 450 A.2d 952. But where the adoption of the federal law of seizure would be a radical change, our Court has relied solely on state search and seizure law. State v. Tucker, 136 N.J. 158, 164, 642 A.2d 401, 405 (1994). At least two recent Appellate Division decisions, discussed below, raise serious doubt that the federal view would be accepted under New Jersey search and seizure jurisprudence. State v. L.F., 316 N.J.Super. 174, 719 A.2d 1272 (App.Div.1998), State, In Interest of J.G., 320 N.J.Super. 21, 726 A.2d 948 (App. Div.1999). Therefore, it would appear logical and reasonable for this court to follow Tucker's reasoning and analyze the facts under the state's definition of seizure. Tucker, supra, at 1165, 642 A.2d 401.
Our courts have delineated three types of citizen-police encounters. An officer may: (1) arrest where probable cause exists, (2) stop for brief investigatory questioning where articulable, reasonable suspicion exists (a so-called "Terry stop"), or (3) make a "field inquiry" without any grounds of suspicion. State v. Alexander, *472 191 N.J.Super. 573, 576, 468 A.2d 713, 714 (App.Div.1983), certif. denied, 96 N.J. 267, 475 A. 2d 570 (1984). That there was no probable cause to justify the officer's approach is not disputed. The State does not even argue that the officer had reasonable articulable suspicion to approach the defendant but rather that the encounter did not constitute a "stop". Nevertheless a determination of whether articulable reasonable suspicion existed is essential to a comprehensive resolution of all factual and legal issues.
An examination of recent cases on the issue is helpful. In State v. L.F., supra, the defendant, who was known to the officers as someone with a criminal record, was observed standing outside a clinic for mentally handicapped persons located in a high crime area. As the officers approached, defendant turned and began walking down a dirt path commonly used by residents. The defendant was then observed putting something from his left hand into his right pocket. The officers immediately approached and asked the defendant what he put in his pocket. Subsequent questioning lead to a search and discovery of CDS. In reversing the trial court's denial of defendant's motion to suppress, the court found that "[d]efendant did nothing remotely suspicious," especially in light of the officer's failure to provide even a "subjective justification" for suspecting the defendant was engaged in wrongdoing. Id. at 179, 719 A.2d 1272. In J.G., supra, the court held that the defendant and his companion fitting the profile of drug couriers was insufficient to support a finding of reasonable suspicion in the absence of "specific and overt conduct." Id. at 33, 726 A.2d 948. In State v. Kuhn, 213 N.J.Super. 275, 517 A.2d 162 (App.Div.1986), defendant's conduct did not furnish reasonable suspicion where he was observed standing outside the driver's side of a vehicle parked diagonally across more than one space in an arrangement that the officer opined the pattern of a drug transaction, even though the defendant quickly left upon seeing the approaching officer.
Defendants' conduct in this case and in L.F. are equally innocuous. Here, defendant was merely sitting in his van, reading a newspaper on a rural street. Moving one's vehicle from one side of the street to the other is not suspicious conduct. The fact that defendant's vehicle was parked in the lane of travel did not factor into the officer's decision to approach the vehicle; he merely stated that he had never seen defendant's vehicle and that it was "a suspicious car first thing in the morning." The defendant did nothing to suggest he was engaging in or about to engage in criminal conduct and the officer offered no other explanation to justify the approach.
The facts compel the conclusion that the officer lacked reasonable articulable suspicion to stop the defendant. It is, therefore, necessary to determine if the intrusion amounted to a stop or, as urged by the State, nothing more than a "field inquiry." Even where a person's conduct does not constitute "highly suspicious" activity, a field inquiry or street interrogation may be reasonable, especially in light of the officer's knowledge and experience. State v. Sheffield, 62 N.J. 441, 446, 303 A.2d 68, 71 (1973) (citing Adams v. Williams, supra). In clarifying the scope of the field inquiry, our courts have repeatedly recognized that a citizen's rights under the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution, are not violated by an officer "merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if he is willing to listen, or by offering as evidence in a criminal prosecution his voluntary answers to such questions." State v. Davis, 104 N.J. 490, 497, 517 A.2d 859, 863 (1986) (citing Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983)). An analysis of police/citizen encounters *473 requires careful consideration of the facts in light of the seriousness of the crime being investigated, the degree of police intrusion and the extent of the citizen's consent to the intrusion. State v. Alexander, supra, at 576-577, 468 A.2d 713, 714. Under New Jersey law, an investigatory or Terry stop is deemed to have occurred where, in light of the circumstances, "a reasonable person would feel that he was not free to leave." State v. Davis, supra, citing U.S. v. Mendenhall. Stated differently, a field interrogation is not a Fourth Amendment event "so long as the officer does not deny the individual the right to move." State v. Sheffield, supra, at 447, 303 A.2d 68.
In deciding whether a particular encounter is a field inquiry or so-called "Terry stop", the Appellate Division recently relied on Professor Lafave's standard mentioned in Davis. State, In Interest of J.G., supra. From that standard the court derived three factors, reasoning that a seizure would not be found to have occurred if: (1) the officer's questions were conversational in manner, (2) the officer made no demands or issued orders; and (3) if the officer's questions were neither "overbearing or harassing in nature." J.G., supra, at 30, 726 A.2d 948. Differentiating between a field inquiry and a seizure had not previously been treated as it is in J.G.; cases dealing with a request for identification have found reasonable suspicion, obviating the need for delineation. See, e.g., State v. Butler, 278 N.J.Super. 93, 650 A.2d 397 (App.Div.1994), State v. Alexander, supra. State v. Wilcox, supra.
Although initially a field inquiry, a police-citizen encounter may elevate to a "Terry stop" depending on subsequent police action. In J.G., supra, the officer observed defendant and another traveler in a train station who fit the profile of drug traffickers in the New YorkNewark corridor. After noticing the officer's presence, defendant's companion engaged the officer in a conversation about his train ticket and the officer eventually requested his permission to question him. Following a pat-down and discovery of drug paraphernalia on his companion, defendant, appearing to be in a "state of panic", was asked by the officer whether there was "anything on him that he shouldn't have." This lead to a pat-down and subsequent discovery of CDS. In applying the Davis factors, the court found the third factor was lacking, reasoning that the question put to the defendant was "unduly authoritative, indicative of a criminal suspicion." Id. at 31, 726 A. 2d 948. The court therefore held the officer's question converted the initial field inquiry into a "Terry stop", requiring reasonable, articulable suspicion.
In this case, the officer's initial approach of defendant's van would have been a field inquiry. State v. Alexander, supra. The scope of the field interrogation would have permitted the officer to inquire why the defendant was there or to otherwise engage defendant in consensual conversation. The least intrusive manner of investigation to confirm or dispel the existence of criminality is required especially where no articulable basis for suspected wrongdoing is offered. U.S. v. Cortez, 449 U.S. 411, 417-418, 101 S.Ct. 690, 694-695, 66 L.Ed.2d 621, 628-629 (1981). Thus the initial question ought to have been "why are you here?" Follow up questions would certainly have been warranted if the defendant's responses failed to vitiate the officer's concern. Ultimately the request for credentials may have been justified. Here, however, the officer immediately asked defendant for his "driving credentials," a question which bespeaks the officer's suspicion that defendant was engaged in criminal wrongdoing. As Professor Lafave observed, "the critical inquiry would be whether the policeman, although perhaps making inquiries which a private citizen would not be expected to make, has otherwise conducted himself in a manner consistent with what would be viewed as a non-offensive contact if it occurred between two ordinary citizens." Davis, supra. fn 6, citing W.R. Lafave, 3 *474 Search and Seizure, § 9.2 at 53. Approaching a vehicle and requesting that a citizen, who was peaceably seated in his vehicle, produce his driving credentials is not "non-offensive contact." Such an approach and request is characteristic of a motor vehicle stop, which is a seizure under New Jersey law. State v. Murphy, 238 N.J.Super. 546, 552, 570 A.2d 451, 454 (App.Div.1990). The officer's request for driving credentials likely conveyed to the defendant that he was suspected of unlawful activity. In light of defendant's innocuous conduct, the request was overbearing or harassing. J.G., supra. A reasonable person, under those circumstances, would not have felt free to leave. Even though the officer made a "request" for credentials, his request following his assertion of police authority was likely perceived (indeed most likely intended) to be a command to do so and a refusal to comply or depart the scene was not likely to be tolerated.
Accordingly, this court finds the officer's approach and request for "driving credentials" to be a seizure within the meaning of the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution. The lack of probable cause or reasonable suspicion renders the seizure unlawful. The fruits of that seizure, including evidence obtained from defendant's response to the request for credentials, are suppressed.
The case is remanded to Municipal Court for further proceedings.
NOTES
[1] In dicta and in the context of assessing the validity of a warrantless search, a Law Division court reasoned that the officers had a duty to investigate a suspicious vehicle parked in a high crime area "[a]nd even request the driver's license and registration." State v. Lowry, 95 N.J.Super. 307, 325, 230 A.2d 907, 916 (Law Div.1967). The facts reveal that no request for identification was made, at least before the warrantless search of defendant's vehicle.