**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0651-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TRAVIS J. MIDDLEBROOKS,
a/k/a BRANDON ADAMS,
TRAVIS L. MIDDLEBROOKS,
and BIG BABY,

     Defendant-Appellant.

_____

Submitted November 15, 2021 – Decided December 2, 2021

Before Judges Rothstadt and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment Nos. 16-11-0921, 17-08-0804, and 19-01-0006.

Joseph E. Krakora, Public Defender, attorney for appellant (James K. Smith, Jr., Assistant Deputy Public Defender, of counsel and on the briefs).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Mark Niedziela, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Travis J. Middlebrooks appeals from separate judgments of conviction (JOC) following his guilty plea to three controlled dangerous substance-related offenses (CDS). He was sentenced to an aggregate eight-year extended custodial term with a four-year period of parole ineligibility, along with applicable fines and penalties.

Defendant entered his plea following the denial of his motion to suppress. On appeal, he argues:

> I. THE JUDGE ERRED IN DENYING THE MOTION TO SUPRESS BECAUSE THE ACT OF EXCHANGING AN UNKNOWN ITEM OR ITEMS FOR MONEY, EVEN IN A HIGH-CRIME NEIGHBORHOOD, DID NOT GIVE THE POLICE REASONABLE [SUSPICION] TO DETAIN DEFENDANT.
>
> A. THE TESTIMONY AT THE HEARING.
>
> B. THE JUDGE'S FINDINGS.
>
> C. THE EXCHANGE OF "SMALL OBJECTS" FOR CASH DOES NOT IN ITSELF PROVIDE REASONABLE SUSPICION TO CONDUCT AN INVESTIGATORY DETENTION, EVEN IN A HIGH CRIME AREA.
>
> II. THIS CASE SHOULD BE REMANDED FOR A RESENTENCING DUE TO THE COURT'S

2

FAILURE TO GIVE ADEQUATE REASONS FOR
THE SENTENCE IMPOSED.

After considering these arguments against the record and applicable legal principles, we affirm the court's decision to deny defendant's suppression motion and the resulting convictions and sentence. We remand for the limited purpose for the court to amend two of the JOCs to correctly reflect the offenses to which defendant provided a factual basis and pled guilty.

I.

At the suppression hearing, one witness testified, Detective Salvatore Macolino, a twelve-year veteran of the Paterson Police Department. Detective Macolino's experience included working as a patrol officer prior to his assignment to the narcotics division. He received training from the police academy in the recognition of CDSs, participated in additional instruction provided by the Drug Enforcement Agency, and testified he was involved in fifteen to twenty thousand cases involving the recovery of CDSs.

On June 3, 2016, Detective Macolino was patrolling the area of Hamilton and Summer Streets in Paterson with Detective Sergeant Piccelli and Detective Singh. As they were working undercover at the time, all the officers were in plain clothes and in an unmarked vehicle with Detective Sergeant Piccelli

3

driving, Detective Macolino in the front passenger's seat, and Detective Singh in the rear passenger seat.

At approximately 9:00 p.m., Detective Macolino observed defendant standing on Summer Street interacting with an individual through the driver's side window of a black Chevrolet Cruze parked on the right-hand side of the road. He testified that he was approximately fifteen feet away from the vehicle with an unobstructed and well-lit view when he witnessed, based on his training and experience, defendant and the occupant of the Chevrolet Cruze engage in "a hand-to-hand drug transaction." Specifically, Detective Macolino stated he observed defendant exchange "small items, which he had in his pocket . . . for paper currency," which was "crumpled up" or "folded." He described the transactions as "quick," with defendant "cup[ping]" his hand when making the transfer of the items.

Detective Macolino described Summer Street as an area well known to him as he was involved in "numerous narcotic[-]related investigations and arrests" within that area of Paterson. He characterized the area as not only a "well documented high crime and drug trafficking area," but an "open area drug market."

4

After the police observed the transaction, Detective Sergeant Piccelli pulled the undercover police car in front of the Chevrolet Cruze, at which time Detective Macolino testified defendant was not free to leave. He exited his vehicle and approached the driver side window of the Chevrolet Cruze, which was rolled down. As he advanced, defendant began to walk away.

When Detective Macolino approached the window, he observed "glassine envelop[es] in . . . a bundle form by the center console area." Based on his training and experience, Detective Macolino determined the CDS was bundled heroin, which he explained was "typically [ten] glassines of heroin bound together by a rubber band." He informed Detective Sergeant Piccelli and Detective Singh that he believed there were CDSs in the vehicle and placed the driver under arrest.

Detective Macolino advised defendant he was under arrest. Defendant then fled and ran into the first floor of a nearby building. A short time later, he exited the rear of the building where he was arrested by Detective Sergeant Piccelli. Detective Macolino noted that in addition to the heroin seized from the vehicle, the police recovered $172 from defendant.

On November 10, 2016, defendant was charged under Indictment No. 16-11-0921 with: 1) third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1); 2)

5

third-degree distribution of CDS, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); 3) third-degree distribution of CDS within 1,000 feet of school property, N.J.S.A. 2C:35-7 and N.J.S.A. 2C:35-5(a); 4) second-degree distribution of CDS within 500 feet of a public housing facility, park, or building, N.J.S.A. 2C:35-7.1 and N.J.S.A. 2C:35-5(a); 5) third-degree burglary, N.J.S.A. 2C:18-2(a)(1); and 6) fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2).

Defendant was also charged with multiple additional offenses in two separate indictments related to unrelated incidents. As defendant's plea addressed these charges as well, we briefly detail the offenses in those two charging documents.

On August 15, 2017, defendant was charged under Indictment No. 17-08-0804 with: 1) third-degree possession of CDS; 2) third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); 3) third-degree possession of CDS with intent to distribute within 1,000 feet of school property; and 4) second-degree possession of a CDS with intent to distribute within 500 feet of a public housing facility, park, or building.

Defendant was thereafter charged on January 10, 2019 under Indictment No. 19-01-0006 with: 1) three counts of third-degree possession of CDS; 2) one count of third-degree distribution of CDS; 3) three counts of third-degree

6

distribution of CDS within 1,000 feet of school property; 4) three counts of distribution of CDS within 500 feet of a public housing facility, park, or building; 5) two counts of third-degree possession of CDS with intent to distribute; 6) one count of third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(1); 7) one count of second-degree possession of a weapon while committing certain CDS offenses, N.J.S.A. 2C:39-4.1(a) and N.J.S.A. 2C:35-5; 8) one count of fourth-degree possession of a prohibited weapon or device, N.J.S.A. 2C:39-3(h); 9) one count fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d).

Defendant filed a motion to suppress in which he claimed the initial Terry[1] investigatory stop, subsequent arrest, search and seizure violated his Fourth Amendment rights. The court denied the motion in a May 20, 2019 order, and in its accompanying oral decision found Detective Macolino a credible witness, characterizing his demeanor as "calm, respectful, cooperative[,] and non[-]confrontational," and his substantive testimony as "straightforward" with a "clear recollection of the underlying events."

Relying on State v. Davis, 104 N.J. 490, 504 (1986), State v. Gibson, 218 N.J. 277, 298 (2014), and United States v. Cortez, 449 U.S. 411 (1981), the court

---

[1] Terry v. Ohio, 392 U.S. 1 (1968).

A-0651-19

determined the initial investigatory stop lawful as it was based on Detective Macolino's experience and his "particularized suspicion of criminal activity in considering the totality of the circumstances surrounding the stop." In support of its decision, the court found:

> [B]ased on Detective Macolino's training and experience[,] the location the detectives were patrolling on Summer Street is known to be a high crime drug trafficking area, also, described as an open air drug market.
>
> Moreover, while patrolling the area [Detective] Macolino witnessed an interaction between . . . defendant and [the driver of the vehicle] which . . . he believed to be a hand-to-hand narcotics transaction. This [was] based on his observation of the defendant removing small objects from his pocket, passing them to Ms. Luth in exchange for, quote, "crumpled up paper currency."

The court also concluded that once defendant began to flee, the police had additional particularized suspicion to detain him.

Next, the court applied the two-step test discussed in State v. Gonzalez, 227 N.J. 77 (2016), and determined the seizure of the heroin was justified under the plain view doctrine. The court explained that Detective Macolino was "lawfully . . . in an area where he observed and seized" the "bundles of heroin" through the open window of the vehicle.

Alternatively, the court concluded the search was valid under the automobile exception to the warrant requirement. In this regard, the court found as Detective Macolino approached the vehicle he "observed the bundles" and this "observation gave rise to probable cause that the black vehicle contained elicit contraband constituting evidence of a crime."

Finally, the court explained that the search and seizure was valid as a search incident to arrest. The court noted that the detectives had "probable cause to arrest the defendant and a search was reasonably contemporaneous with the suspicion that [defendant] had executed a hand-to-hand transaction."

On June 27, 2019, defendant pled guilty to one charge from each indictment. The record, however, reveals discrepancies between defendant's plea form, testimony, and the resulting JOCs. We detail these inconsistences as they explain the bases for our limited remand.

First, regarding Indictment No. 16-11-0921, defendant's plea form indicated he was pleading guilty to count six, possession with intent to distribute CDS. That indictment, however, did not charge defendant with possession with intent to distribute CDS, and count six was actually a charge for resisting arrest. At the plea hearing, defendant provided a factual basis for possession with intent

9

to distribute CDS, but the resulting JOC erroneously listed that defendant was convicted of count six, resisting arrest.

Second, as to Indictment No. 19-01-0006, defendant's plea form stated he intended to plead guilty to count eight, possession with intent to distribute CDS within 1,000 feet of a school, which was actually count six; count eight charged him only with possession with intent to distribute CDS. At his plea hearing, defense counsel properly noted that defendant's plea related to count six, and defendant provided a factual basis for possession with intent to distribute CDS within 1,000 feet of a school. The resulting JOC, however, erroneously stated defendant was convicted of count eight, possession with intent to distribute CDS.

In exchange for defendant's plea, the State recommended an "extended term sentence of eight [years] with [forty-eight months] . . . to be served before parole eligibility" on Indictment Nos. 16-11-0921 and 19-01-0006, and four years on Indictment No. 17-08-0804, to run concurrently. The State also dismissed the remaining counts in the three indictments.

On August 21, 2019, the court sentenced defendant consistent with the plea agreement to an aggregate eight-year extended-term prison sentence with four years of parole ineligibility related to Indictment Nos. 16-11-0921 and 19-

01-0006.  Defendant was also sentenced to a four-year custodial term with respect to Indictment 17-08-0804, concurrent to the sentences imposed related to the other two indictments.

In support of its sentence, the court found aggravating factor three, the risk that the defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3); aggravating factor six, the extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted, N.J.S.A. 2C:44-1(a)(6); and nine, the need for deterring the defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9).  The court found these aggravating factors applicable, after thoroughly considering the presentence report and noting defendant's extensive criminal record, including two disorderly person's offenses, two CDS-related offenses, unlawful possession of a weapon, and aggravated assault.

The court also acknowledged that defendant had previously completed three outpatient drug programs and had sporadic employment.  Finally, the court found that defendant was not married, did not have any children, and lived in the same residence as his mother.

On December 10, 2019, defendant was resentenced under Indictment No. 19-01-0006 to a four-year prison term with a two-year period of parole

ineligibility. The court explained that the concurrent sentence was reduced because "the original sentence contained [a] second extended term which was not permissible" but that "all other aspects of the sentence remain the same."

In addition, on June 2, 2020, the court entered an amended JOC with respect to Indictment No. 16-11-0921, changing the offense for which defendant was convicted to count two of that indictment, distribution of CDS. The amended judgment provided that the:

> [O]riginal [j]udgment of [c]onviction reflected that the sentence [under Indictment No. 16-11-0921] was on [c]ount six. The defendant was sentenced on this count to [eight] years with [four] years of parole ineligibility. This count was incorrect. The sentence should have been imposed on [c]ount [two]. All other aspects of the original sentence remain the same . . . with the exception of one additional day of jail credit as reflected below.

> [Id.].

Although the court amended the JOC, we note that defendant's plea testimony only provided a factual basis for a charge of possession with intent to distribute CDS, rather than distribution. This appeal followed.

## II.

In reviewing a motion to suppress, we defer to the trial court's factual and credibility findings, "so long as those findings are supported by sufficient

12

credible evidence in the record." State v. Handy, 206 N.J. 39, 44 (2011) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). This deference is particularly appropriate when the court's factual findings are "substantially influenced by [its] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Reece, 222 N.J. 154, 166 (2015) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). "An appellate court should disregard those findings only when a trial court's findings of fact are clearly mistaken." State v. Hubbard, 222 N.J. 249, 262 (2015). We afford no special deference to the court's legal conclusions, however, which we review de novo. State v. Gandhi, 201 N.J. 161, 176 (2010).

On appeal, defendant first argues that the police lacked the reasonable, particularized suspicion of criminal activity necessary for an investigatory detention. Specifically, he contends that the "exchange of 'small objects' for cash does not in itself provide reasonable suspicion to conduct an investigatory detention, even in a high crime area." Defendant maintains that "such transaction[s] between friends, neighbors, or family members are a common part of everyday life" and the fact that the transaction occurred in a "high crime, high drug" area alone is not sufficient to provide reasonable suspicion. Defendant further argues that this case is distinguishable from State v. Ramos, 282 N.J.

Super. 19 (App. Div. 1995), State v. Alexander, 191 N.J. Super. 573 (App. Div. 1983), and State v. Pineiro, 181 N.J. 13 (2004), because those cases involved "other factors . . . in addition to hand-to-hand transfer in a high crime area." We disagree with all of defendant's arguments.

The Fourth Amendment of the United States Constitution, and Article I, Paragraph 7 of the New Jersey Constitution, guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" by requiring warrants issued on probable cause. "Under our constitutional jurisprudence, when it is practicable to do so, the police are generally required to secure a warrant before conducting a search . . . ." State v. Hathaway, 222 N.J. 453, 468 (2015) (citations omitted).

Thus, searches and seizures conducted without a warrant "are presumptively invalid as contrary to the United States and the New Jersey Constitutions." Pineiro, 181 N.J. at 19 (citing State v. Patino, 83 N.J. 1, 7 (1980)). As such, "the State must demonstrate by a preponderance of the evidence" that "[the search] falls within one of the few well-delineated exceptions to the warrant requirement." Id. at 19-20 (alteration in original) (quoting State v. Wilson, 178 N.J. 7, 13 (2003); State v. Maryland, 167 N.J. 471,

14

482 (2001)). One exception is an investigatory stop. See Elders, 192 N.J. at 246-47.

It is well settled that police officers may lawfully detain someone to conduct an investigatory stop without a warrant, and on less than probable cause. Terry, 392 U.S. at 21-22; State v. Stovall, 170 N.J. 346, 356 (2002). An investigatory stop allows an officer to detain an individual temporarily for questioning if the officer can articulate "some minimal level of objective justification" based on "something more" than an "inchoate and unparticularized suspicion or hunch" of wrongdoing. United States v. Sokolow, 490 U.S. 1, 7 (1989) (citation and internal quotation marks omitted); accord State v. Nishina, 175 N.J. 502, 510-11 (2003).

A warrantless investigative stop is valid when an "officer observes unusual conduct which leads [the officer] reasonably to conclude in light of his [or her] experience that criminal activity may be afoot." Terry, 392 U.S. at 30. The stop must be "based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity." Pineiro, 181 N.J. at 20 (quoting Nishina, 175 N.J. at 510-11). Reasonable suspicion "involves a significantly lower degree of objective evidentiary justification than does the probable cause test," Davis, 104 N.J. at

A-0651-19

501, and is found when an officer has "a particularized and objective basis for suspecting the person stopped of criminal activity." Stovall, 170 N.J. at 356 (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)).

A reviewing court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing" by the detained individual. United States v. Arvizu, 534 U.S. 266, 273 (2002). In evaluating the totality of the circumstances "giving rise to the officer's suspicion of criminal activity, courts are to give weight to 'the officer's knowledge and experience' as well as 'rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise.'" State v. Richards, 351 N.J. Super. 289, 299-300 (App. Div. 2002) (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)).

Some of the factors to be considered when reviewing a police officer's decision to embark upon an investigatory stop are as follows: the officer's experience and knowledge, Pineiro, 181 N.J. at 22 (citing Davis, 104 N.J. at 504); the defendant's presence in a high crime area, see Pineiro, 181 N.J. at 26; and the defendant's criminal history. Id. at 24-25, 29. The suspect's demeanor, such as nervousness when questioned by the police, may also be considered in determining whether reasonable suspicion exists. Stovall, 170 N.J. at 367.

However, a person's flight upon seeing the police, without more, generally does not constitute reasonable suspicion to support a stop. State v. Dangerfield, 171 N.J. 446, 457-58 (2002); Pineiro, 181 N.J. at 26; State v. Tucker, 136 N.J. 158, 168-69 (1994).

Similarly, an individual's "presence in a high crime or narcotics area does not give the police reasonable grounds for an investigatory stop and frisk where the conduct of the suspect itself adds nothing to justify police intrusion." In re State in Interest of D.S., 125 N.J. Super. 278, 286 (App. Div. 1973) (Botter, J., dissenting), rev'd on dissent, 63 N.J. 541 (1973). That a location is "a high-crime area does not mean that residents in that area have lesser constitutional protection from random stops." State v. Shaw, 213 N.J. 398, 420 (2012).

We are satisfied that the court's factual findings are supported by sufficient credible evidence and its legal conclusions are in accordance with applicable constitutional jurisprudence. Detective Macolino testified that based on his extensive experience, he observed defendant involved in a hand-to-hand drug transaction at night in an "open area drug market," not simply a high crime area. His observations included defendant exchanging "small items, which he had in his pocket . . . for currency" with the driver of the Chevrolet Cruze in a quick manner and while his hands were cupped.

A-0651-19

Based on Detective Macolino's training and experience, he believed the "manner[]" in which the objects were transferred – quickly and with a cupped hand – supported the conclusion that defendant was engaged in a hand-to-hand drug transaction. These constitute articulable facts to support an objectively reasonable determination that defendant engaged in criminal activity sufficient to justify the Terry stop. See Pineiro, 181 N.J. at 26 ("the reputation or history of an area" as being a high-crime area "and an officer's experience with and knowledge of the suspected transfer of narcotics" are "relevant factors to determine the validity of a Terry stop").

In disputing that Detective Macolino lacked specific and articulable facts supporting his reasonable suspicion that defendant was engaging in criminal activity to warrant the initial Terry stop, defendant compares this case with Pineiro, Alexander, and Ramos. We are not persuaded.

In Pineiro, an officer was patrolling a "high drug, high crime area" when he observed two men, both of whom he knew to be involved with drugs, exchanging a cigarette pack. Pineiro, 181 N.J. at 18. The officer became suspicious because his "specialized knowledge" included that "cigarette pack[s] [are] sometimes . . . used to transport drugs." Id. at 19. Thereafter, the men

noticed the officer, appeared shocked, and immediately attempted to leave the area before the officer and his partner detained them.  Id. at 18-19.

Our Supreme Court held that the officer had "reasonable and articulable suspicion of criminal activity, justifying an investigatory stop."  Id. at 25.  The Court reasoned that "police may rely on behavior that is consistent with innocence as well as guilt in finding reasonable and articulable suspicion to conduct an investigatory stop" and "even though standing alone each factor may not have been sufficient, the totality of the circumstances" viewed by an officer with knowledge and experience justified the investigatory stop.  Ibid.

In Alexander, officers were patrolling a "high drug area" and observed the defendant exchanging money with another individual.  Alexander, 191 N.J. Super. at 575.  When they noticed the officers, they appeared to be surprised and, when asked what they were doing responded "nothing."  Ibid.  We held that "taken together these facts . . . form a reasonable basis to suspect that defendant was engaged in an illegal drug transaction."  Id. at 576.

In Ramos, an officer observed the defendant standing in the rain in "a high drug trafficking area" and exchanging something unidentifiable concealed in his closed fist for currency.  Ramos, 282 N.J. Super. at 20.  We held that "[the officer's] observations, considered in light of his training and experience,

supported a reasonable suspicion that defendant was engaging in a drug transaction." Id. at 21.

Here, as discussed, Sergeant Macolino observed defendant in an "open area drug market" quickly exchanging something unidentifiable concealed in a cupped hand for currency, which based on his experience suggested that defendant was engaged in a drug transaction. These facts are comparable to those that supported a finding of reasonable suspicion in Pineiro, Alexander, and Ramos, and when viewed in totality by an officer of Sergeant Macolino's expertise, sufficiently established a "reasonable and articulable suspicion of criminal activity, justifying an investigatory stop." Pineiro, 181 N.J. at 25.

To the extent defendant challenges his arrest, we agree with the court that the police had probable cause to arrest defendant. In addition to an investigatory stop, a second exception to the warrant requirement authorizes the warrantless search of persons incident to their lawful arrest. See United States v. Robinson, 414 U.S. 218, 225 (1973). Indeed, because a lawful "custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment[,] . . . a search incident to the arrest requires no additional justification," and the mere "fact of the lawful arrest which establishes the

authority to search" justifies "a full search of the person." Id. at 235; see also Dangerfield, 171 N.J. at 461.

Probable cause to arrest is "something less than [the] proof needed to convict and something more than a raw, unsupported suspicion." State v. Davis, 50 N.J. 16, 23 (1967). Probable cause exists when the totality of the facts and circumstances presented to the arresting officer would support "a [person] of reasonable caution in the belief that an offense has been or is being committed." State v. Sims, 75 N.J. 337, 354 (1978) (quoting Draper v. United States, 358 U.S. 307, 313 (1959)).

Here, as Detective Macolino approached the vehicle, defendant simultaneously began to walk away. He approached the vehicle and viewed what appeared to be bundled heroin in the front car seat in plain view.[2] At that point, defendant attempted to flee the scene. These facts, combined with Detective Macolino's and the other officer's initial observations, fully supported defendant's arrest and the resulting search. See State v. Johnson, 171 N.J. 192,

---

[2] To fall under the plain view exception, the officer must be lawfully present in the viewing area when he or she observes the evidence, and the incriminating nature of the evidence to be seized must be immediately apparent to the officer. Gonzalez, 227 N.J. at 101. Those conditions were clearly met here as Detective Macolino saw the bundle of glassine envelopes containing heroin while standing in a public street after attempting to conduct a lawful Terry stop.

214 (2002) (describing that plain view of drugs establishes probable cause to make an arrest); State v. Doss, 254 N.J. Super. 122, 129-30 (App. Div. 1992) (holding defendant's flight from an investigatory stop constituted probable cause for his arrest).[3]

### III.

In his second point, defendant challenges his sentence contending that "because the sentence was greater than required by N.J.S.A. 2C:43-6(f), the [court] was not bound to impose it."[4] Specifically, defendant asserts that under that statutory provision he was eligible for a five-year prison term with a three-

---

[3]  As noted, the court also relied on the automobile exception to the warrant requirement to support defendant's search and seizure.  See State v. Roman-Rosado, 462 N.J. Super. 183, 196 (App. Div. 2020), aff'd as modified sub nom. State v. Carter, 247 N.J. 488 (2021) (describing that "[a] police officer has the right to conduct an investigatory stop of a motor vehicle where there is a reasonable and articulable suspicion that violations of the motor vehicle code or other laws have been or are being committed," but "an automobile search incident to the traffic stop is forbidden absent probable cause of other criminal conduct or if the occupants pose a safety threat.").  We do not reach that alternative ruling because we have concluded, as did the court, that the police conducted a constitutionally permissible Terry stop and arrest.  We also note that neither party has briefed the issue of the propriety of the search and seizure under this exception.

[4]  Despite a certain lack of clarity in his plea forms, defendant does not contest that he was eligible, based on his prior criminal history, for a mandatory extended term under N.J.S.A. 2C:43-6(f).  He also concedes that he was fully aware that "the prosecutor was . . . asking that [he] be sentenced to an extended term."

year period of parole ineligibility, and the court did not provide "sufficient findings" supporting the longer sentence. In addition, the defendant claims that the court failed to consider mitigating factor eleven, "imprisonment of the defendant would entail excessive hardship to himself or his dependents." N.J.S.A. 2C:44-1(b)(11).

Our review of a court's sentencing decision "is relatively narrow and is governed by an abuse of discretion standard." State v. Blackmon, 202 N.J. 283, 297 (2010). We "must affirm the sentence of a trial court unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

We are further "bound to affirm a sentence, even if [we] would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." State v. O'Donnell, 117 N.J. 210, 215 (1989). An appellate court should modify a sentence "only when the trial court's determination was 'clearly mistaken.'" State v. Jabbour, 118 N.J. 1, 6 (1990)

23

(quoting State v. Jarbath, 114 N.J. 394, 401 (1989)). "[A]n appellate court should not second-guess a trial court's finding of sufficient facts to support an aggravating or mitigating factor if that finding is supported by substantial evidence in the record." O'Donnell, 117 N.J. at 216; see also State v. Carey, 168 N.J. 413, 426-27 (2001).

The Comprehensive Drug Reform Act of 1987 (CDRA), N.J.S.A. 2C:35-1 to 35-31, L. 1987, c. 106, requires extended mandatory minimum terms for certain enumerated offenses based on a defendant's prior drug convictions. Under the CDRA, a person convicted of distributing or possession with intent to distribute a CDS, "who has been previously convicted of manufacturing, distributing, dispensing or possessing with intent to distribute [CDS] . . . shall upon application of the prosecuting attorney be sentenced by the court to an extended term as authorized by section c. of N.J.S.A. 2C:43-7, notwithstanding that extended terms are ordinarily discretionary with the court." N.J.S.A. 2C:43-6(f). In addition, "[t]he term of imprisonment shall, except as may be provided in N.J.S.A. 2C:35-12, include the imposition of a minimum term . . . fixed at, or between, one-third and one-half of the sentence imposed by the court[,] . . . during which the defendant shall be ineligible for parole." Ibid.

We are satisfied, from our review of the entire transcript of the sentencing proceedings, that the court sufficiently set forth the reasons for its sentence and the factual basis supporting each aggravating factor considered and the balancing process that led to the sentence. In this regard, the court considered defendant's extensive criminal history, including two disorderly person's offenses, two CDS offenses, unlawful possession of a weapon, and aggravated assault, and found three aggravating factors applicable and no mitigating factors.

Regarding mitigating factor eleven, we first note that defendant never requested that the sentencing court consider this factor, nor did the record support its application. Defendant was single, did not have any children, was sporadically employed, and was the only one of his siblings living with his elderly mother, and the record does not indicate that he was her sole caregiver. Simply put, we are satisfied with the court's conclusion that a lengthy term of imprisonment would not cause an excessive hardship to defendant or his elderly mother.

Accordingly, we are satisfied that the court did not err in its consideration, explanation and application of the aggravating factors against the non-existent mitigating factors, including mitigating factor eleven, and defendant's sentence does not shock our judicial conscience. <u>Bolvito</u>, 217 N.J. at 228.

A-0651-19

IV.

Although we reject the substance of defendant's appeal, we nevertheless conclude that a limited remand is required to correct the clerical discrepancies between defendant's plea testimony and resulting JOCs related to Indictment Nos. 16-11-0921 and 19-01-0006. As noted, regarding Indictment No. 16-11-0921, defendant provided a factual basis for possession of CDS with intent to distribute, but the amended JOC listed a conviction for count two, distribution of CDS. As to Indictment No. 19-01-0006, defendant provided a factual basis for possession of CDS with intent to distribute within 1,000 feet of a school, but the JOC stated that he was convicted of count eight, possession of CDS with intent to distribute.

Defendant's JOCs should be amended to reflect properly the charges to which he pled guilty. This will not affect defendant's aggregate sentence, because, in light of his prior CDS conviction for distribution of CDS, the revised JOC for possession with intent to distribute CDS under Indictment No. 16-11-0921 subjects him to the same mandatory extended term as a conviction for distribution of CDS. N.J.S.A. 2C:43-6(f).

To the extent we have not addressed any of defendant's remaining arguments, it is because we have concluded they are of insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed in part, remanded in part.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0651-19