**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2324-24

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

FREDDY C. RIVERA,

     Defendant-Appellant.

_____

Submitted April 22, 2026 – Decided May 7, 2026

Before Judges Mayer and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 22-09-2705.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Alison Gifford, Assistant Deputy Public Defender, of counsel and on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Freddy C. Rivera appeals from a judgment of conviction for drug and firearm offenses after entering a guilty plea. His appeal is limited to the denial of his motion to suppress evidence. We affirm.

We recite the testimony from an evidentiary hearing on defendant's suppression motion. On the afternoon of June 29, 2022, Detective Vaughn Edwards, who at the time had worked for the Camden County Police Department (Department), sat in his unmarked police car parked at the corner of Mount Ephraim Avenue and Jackson Street in Camden. For four-and-a-half of his nine years with the Department, Detective Edwards was assigned to the narcotics and gang unit. During his tenure with the narcotics and gang unit, he made between 200 and 400 arrests.

Detective Edwards testified he often investigated areas in Camden reporting high incidents of robberies and drug activity. On that June day, he watched Jackson Street from his driver's side window. It was sunny, and the detective had an unobstructed view at the same corner location for "about an hour or two."

As he sat, Detective Edwards "observed multiple suspected buyers" and "observed a male engaging with the suspected buyers in brief conversation." The detective identified the male as defendant.

From about 50 to 100 feet away, he saw defendant interact with three different individuals. First, he saw defendant briefly "speaking with a suspected buyer." He then saw defendant "walk[] overt to a black Mazda, [enter] into the front driver's side window, retrieve[] small unknown items, . . . [and] hand[] that suspected buyer some of those small unknown items for U.S. paper currency." The detective characterized the events he witnessed as "a hand-to-hand joint transaction[s]."

In a second interaction, Detective Edwards, still seated in his car, saw a "Black male wearing a pink shirt" exit the black Mazda. The man in the pink shirt and defendant spoke briefly with two additional suspected buyers. The man wearing the pink shirt then opened the Mazda's door, retrieved a clear plastic bag, and gave each suspected buyer some "small, unknown items" in exchange for money. When Detective Edwards made these observations, his body-worn camera (BWC) was not activated. The detective testified he made these observations without the use of binoculars or any other visual aid.

Detective Andrew Coulter with the Department also testified at the evidentiary hearing. He detained defendant after Detective Edwards called for backup.

A-2324-24

During an initial search of defendant's person, Detective Coulter found a firearm in defendant's waistband. Other officers who searched defendant found seventeen heat-sealed bags and twenty-nine small plastic vials of suspected crack cocaine.

The man in the pink shirt refused consent to search the black Mazda. After towing the car to an impound lot, the police obtained a warrant to search the car and found narcotics.

A Camden County grand jury indicted defendant on three counts of third-degree possession of a controlled dangerous substance (CDS), three counts of third-degree possession with intent to distribute CDS, second-degree possession of a weapon during a CDS offense, second-degree unlawful possession of a firearm without a permit, and second-degree certain persons not to have weapons.

On July 11, 2024, defendant moved to suppress the seized evidence, arguing Detective Edwards' observations were "not accurate and [could not] establish the probable cause for the stop." At the evidentiary hearing, the judge heard testimony from Detectives Edwards and Coulter.

The judge rendered a decision from the bench on August 23, 2024. The judge found Detective Edwards' testimony credible, stating:

A-2324-24

[Detective Edwards] answered all questions in a calm, deliberate manner[, and] did not embellish his answers to favor the State. He was not argumentative or defensive in answering questions on cross-examination by defense counsel. His [BWC] footage [wa]s consistent with his testimony concerning the orientation of his vehicle and its positioning when he made the observations that prompted him to order the arrest of the defendant and others.

The judge also found Detective Edwards "previously made numerous drug and firearms arrests in the area." Based on that experience, the judge explained "it was reasonable for Detective Edwards to conclude that the totality of the circumstances supported a well-grounded suspicion that what he was witnessing were street-level drug transactions being conducted by the defendant." In an August 23, 2024 order, the judge denied defendant's suppression motion.

On January 21, 2025, defendant pleaded guilty to second-degree unlawful possession of a firearm and was sentenced to five years in prison with a forty-two-month period of parole ineligibility.

On appeal, defendant raises the following arguments:

POINT I

THE COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE IT PREMISED ITS FINDING OF PROBABLE CAUSE TO ARREST ON A MISTAKEN FACTUAL FINDING AND ON FLAWED LEGAL ANALYSIS.

A. The Court's Factual Finding That The Officer's BWC Supports His Testimony Is Clearly Mistaken.

B. Even Accepting The Court's Factual Findings, The Search Of Defendant Was Unlawful Because The State Provided Insufficient Evidence That Defendant Engaged In A Suspected Drug Transaction.

Our review of a trial court's decision on a motion to suppress evidence is circumscribed. See State v. Fenimore, 261 N.J. 364, 372-73 (2025). After a testimonial hearing, we "defer to the trial court's factual findings because the trial court has the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. S.S., 229 N.J. 360, 374 (2017) (quoting State v. Elders, 192 N.J. 224, 244 (2007)); see also State v. Locurto, 157 N.J. 463, 474 (1999) ("Appellate courts should defer to trial courts' credibility findings that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record."). "A trial court's legal conclusions, 'however, and the consequences that flow from established facts,' are reviewed de novo." State v. Bullock, 253 N.J. 512, 532 (2023) (quoting State v. Hubbard, 222 N.J. 249, 263 (2015)).

We "must defer to the factual findings of the trial court on a motion to suppress so long as its findings are supported by sufficient credible evidence in

the record." State v. Erazo, 254 N.J. 277, 297 (2023) (citing Hubbard, 222 N.J. at 262). Our deference includes a trial court's findings based on video-recorded or documentary evidence. See S.S., 229 N.J. at 374-81 (noting the deferential and limited scope of appellate review of findings based on video-recorded evidence).

We first address defendant's argument the State failed to establish probable cause to conduct a search because Detective Edwards' testimony was not credible. Alternatively, even if the detective's testimony was credible, defendant asserts the totality of the circumstances, and the detective's purported observations did not support a probable cause finding. We reject these arguments.

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution protect against "unreasonable searches and seizures" and generally require a warrant issued upon "probable cause." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. "[A] warrantless search is presumptively invalid" unless the State establishes the search falls into "one of the 'few specifically established and well-delineated exceptions' to the warrant requirement." State v. Edmonds, 211 N.J. 117, 130 (2012) (quoting State v. Frankel, 179 N.J. 586, 598 (2004)).

When a defendant moves to suppress evidence seized without a warrant, the State bears the "burden, by a preponderance of the evidence, to establish" an exception to the warrant requirement applies and that "the warrantless search or seizure of an individual was justified in light of the totality of the circumstances." State v. Bard, 445 N.J. Super. 145, 155-56 (App. Div. 2016). "[T]he 'touchstone' for evaluating whether police conduct has violated constitutional protections is 'reasonableness.'" Id. at 157 (quoting State v. Hathaway, 222 N.J. 453, 476 (2015)). "The reasonableness of police conduct is assessed with regard to circumstances facing the officers, who must make split second decisions in a fluid situation." Ibid.

"The Fourth Amendment permits a police officer to make a warrantless arrest of a defendant in a public place provided the officer has probable cause to believe the defendant committed a crime." State v. Basil, 202 N.J. 570, 584 (2010). Probable cause exists when an "officer possesses 'a well grounded suspicion that a crime has been or is being committed.'" Id. at 585 (quoting State v. Sullivan, 169 N.J. 204, 211 (2001)). "The totality of the circumstances must be considered in determining whether there is probable cause." State v. O'Neal, 190 N.J. 601, 612 (2007) (citing State v. Moore, 181 N.J. 40, 46 (2004)).

In finding the detective's demeanor during the evidentiary hearing calm and his answers to questions on direct and cross-examination responsive, the judge deemed Detective Edwards credible. Further, the judge noted the detective's testimony was consistent with the footage from his BWC. Additionally, the judge opined the BWC footage reflected optimal conditions supporting the detective's observations.

Defendant argues "there [wa]s simply no way that an individual without vision enhancement would [have been] able to see the specific items being retrieved" to establish probable cause. According to defendant, "[a]t best, [Detective] Edwards could credibly [have been defendant] walking around a 'well known drug area' and conversing with individuals." Defendant further asserts the detective's credibility was undermined during the evidentiary hearing because his testimony conflicted with BWC footage.

The BWC footage introduced as evidence during the suppression hearing belies defendant's assertion that "there [wa]s simply no way" someone could have viewed the alleged drug exchange. The judge found the BWC footage depicted Detective Edwards stepping out of his car and walking toward the suspects. According to the judge's review of the BWC footage, the suspects

9

were clearly visible from the detective's car and down Jackson Street where the events transpired.

Defendant presented no expert testimony or other evidence in support of his contention that it was impossible for Detective Edwards to have seen defendant's interactions. There is sufficient credible evidence in the record supporting the judge's finding that the detective had a clear view of Jackson Street based on the position of the detective's car and the alleged drug transactions. We defer to those findings.

Additionally, the judge did not rely solely on the BWC footage in denying defendant's suppression motion. The judge based his probable cause finding on Detective Edwards' testimony regarding his observations which were corroborated by his BWC footage.

Even if the detective's testimony was credible, defendant argues, citing State v. Alexander, 191 N.J. Super. 573, 577 (App. Div. 1983), the State failed to establish probable cause because "[h]anding money to someone in broad daylight in an open area at or near the public way may not be a reasonable basis for suspecting drug dealing." Defendant further argues Detective Edwards failed to establish the place where defendant was arrested was a "high-crime area." See State v. Goldsmith, 251 N.J. 384, 404-05 (2022).

10

Detective Edwards testified the area near the corner of Mount Ephraim Avenue and Jackson Street was "a well[-]known drug area." The detective further testified he made many prior arrests linked to drug activity and firearm possession in that area. Relying on Goldsmith, defendant contends Detective "Edwards did not provide a timeline for any of his personal arrests in the area, he did not indicate the approximate number of arrests he had made, and he did not provide context for any of those arrests."

As our Supreme Court held in Goldsmith: "[A]lthough the reputation of an area may be relevant to the analysis . . . '[j]ust because a location to which police officers are dispatched is a high-crime area does not mean that the residents in that area have lesser constitutional protection from random stops.'" Id. at 400-01 (second alteration in original) (quoting State v. Chisum, 236 N.J. 530, 549 (2019)). The Court concluded "the character and prevalence of crime in an area . . . can be one factor in determining whether reasonable suspicion existed" provided the prosecution "provide[s] at least some evidence to support the assertion that a neighborhood should be considered as 'high-crime.'" Id. at 405.

Detective Edwards provided sufficient evidence as to the character of the area and the prevalence of crime in that area based on his numerous prior arrests

11

in the same locale. According to his testimony, Detective Edwards made approximately 200 to 400 arrests related to narcotics investigations and over 100 firearms arrests throughout Camden. Although Detective Edwards did not provide the specific the dates or times for these arrests, the record demonstrates the arrests occurred during the four-and-a-half years Detective Edwards served with the Department's narcotics and gang unit. We are satisfied the judge properly considered the character of the area as a potential factor establishing probable cause under Goldsmith.

Moreover, unlike the facts in Goldsmith, Detective Edwards testified in detail regarding his observations supporting his suspicion that he was witnessing criminal activity. Contrary to the detective who testified in Goldsmith, Detective Edward had more than "a hunch that defendant was engaged in criminal activity." Id. at 406. We are satisfied the totality of the circumstances, supported by Detective Edwards' credible testimony, established probable cause to arrest defendant for suspected drug activity.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division